**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED DECEMBER 30, 2008

AMANDA JEAN ODOM,

      Plaintiff-Appellee,

v

No. 133433

WAYNE COUNTY and CITY OF DETROIT,

      Defendants,

and

CHRISTINE KELLY,

      Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

YOUNG, J.

In this case, we are asked to determine when a governmental employee is immune from liability for an intentional tort. We hold that MCL 691.1407(3) of the governmental tort liability act (GTLA), which explicitly maintains "the law of intentional torts as it existed before July 7, 1986," grants immunity to governmental employees from intentional-tort liability to the extent allowed by the common law before July 7, 1986. We therefore reaffirm and apply the test concerning intentional-tort immunity outlined in

*Ross v Consumers Power Co (On Rehearing).*[1]  Under the *Ross* test, governmental employees enjoy qualified immunity for intentional torts.  A governmental employee must raise governmental immunity as an affirmative defense and establish that (1) the employee's challenged acts were undertaken during the course of employment and that the employee was acting, or reasonably believed he was acting, within the scope of his authority, (2) the acts were undertaken in good faith, and (3) the acts were discretionary, rather than ministerial, in nature.  Neither the trial court nor the Court of Appeals considered whether the governmental employee was entitled to governmental immunity under the test provided in *Ross*.  Accordingly, we vacate the trial court's order with respect to defendant, vacate the judgment of the Court of Appeals and remand to the trial court to apply the proper test.

## I.  FACTS AND PROCEDURAL HISTORY

Wayne County Sheriff's Deputy Christine Kelly (defendant) investigated prostitution and controlled substances offenses in the department's "morality unit."  At the time of the incident giving rise to the present case, she had 10 years' experience and had made more than 500 prostitution-related arrests.  On February 11, 2004, she was conducting surveillance near the intersection of Woodward Avenue and Burlingame Street in the city of Detroit.  Defendant claimed that plaintiff, Amanda Jean Odom, walked back and forth along Woodward while making eye contact with the drivers of cars passing by, a method used by prostitutes to attract the attention of potential customers.  She observed plaintiff approach the driver's side window of a car parked in a liquor store parking lot and then enter the back seat.  The car drove to a nearby grocery

---

[1] 420 Mich 567; 363 NW2d 641 (1984).

store; plaintiff went inside for approximately five minutes and returned to the car,[2] which then drove away.

After contacting her supervisor and calling for backup, defendant followed the car down Woodward Avenue and into a residential area. Detroit police officers stopped the car at a point that, as it turned out, was only two blocks from plaintiff's home. The officers drew their guns and ordered plaintiff and the two female passengers out of the vehicle.[3] The women were all handcuffed and questioned.[4]

Upon being stopped, plaintiff asserted her innocence. She explained that her friend had driven her home from her place of employment and showed that she was still wearing her work identification badge. She further explained that her friend had dropped her off at a bank and driven around the block. However, plaintiff explained that she could not enter the bank because the police were apparently stopping a robbery in progress. She looked north and south before sighting her friend's car in a nearby parking lot. Plaintiff walked to the car, entered the back seat, and was driven to a grocery store, where she used the ATM and purchased some groceries.

After relating her version of events to the officers, plaintiff overheard one officer tell defendant, "Well it's your call." Defendant issued plaintiff a criminal citation for "Disorderly Conduct (Flagging) Impeding the Flow of Vehicular and Pedestrian

---

[2] Defendant asserted that it is not uncommon for a prostitute to go into a store for a short time to purchase alcohol or condoms and return to the customer's car.

[3] There was also a three-year-old child in the car.

[4] Defendant claimed that her suspicions of plaintiff were not alleviated by the fact that the vehicle's occupants were all female. Defendant testified in her deposition that prostitutes often work in teams from a car and drive each other to and from "work." Defendant also explained that females may solicit a prostitute to purchase controlled substances on their behalf.

Traffic"—an offense frequently associated with prostitution. Plaintiff claims that, when she objected to the citation, defendant became angry and told her to "fight it."

Plaintiff was ordered to appear for arraignment one week later. When she appeared, however, the district court had no record of the citation. Plaintiff contacted both the Detroit Police Department and the Wayne County Sheriff's Department to determine the status of the charges against her. Upon learning that the record of plaintiff's citation had been lost, defendant issued a new citation and had the charges reinstated. When plaintiff appeared for arraignment a second time in June 2004, the court required her to attend an AIDS awareness class for sex offenders. The case was postponed several times between June and December 2004. The prosecution finally dismissed the charges on December 6, 2004, because of insufficient evidence. The dismissal order indicated that the parties stipulated to the existence of probable cause. Neither plaintiff nor her counsel signed the dismissal form, and plaintiff denies that she made such a stipulation.

Plaintiff filed suit against defendant, Wayne County, and the city of Detroit, alleging false imprisonment and malicious prosecution. The parties stipulated to the dismissal of the city of Detroit early in the proceedings. In their answer to plaintiff's complaint, defendant and Wayne County raised "individual immunity" and "governmental immunity," respectively, as affirmative defenses. Following discovery, defendant and Wayne County also filed a joint motion for summary disposition based on governmental immunity, MCR 2.116(C)(7), and failure to create a genuine issue of

material fact, MCR 2.116(C)(10).[5]   The trial court granted the county summary disposition on the basis of the governmental immunity conferred by MCL 691.1407(1).[6]

The trial court denied defendant summary disposition. Although plaintiff alleged that defendant had committed the intentional torts of false imprisonment and malicious prosecution, the trial court concluded that plaintiff was proceeding under a gross negligence theory because she had not alleged "an intentional act" such as excessive force. The trial court presumably considered whether defendant was entitled to the immunity conferred by MCL 691.1407(2); however, it did not explicitly cite the statute. The court found that there remained factual questions regarding whether defendant had probable cause to arrest and prosecute plaintiff. The trial court indicated that these factual questions prevented it from determining whether defendant was entitled to immunity as a matter of law. The court thereby treated governmental immunity as an affirmative defense that could be proved at trial.

The Court of Appeals affirmed on other grounds. The Court of Appeals panel made no mention of subsection 3, analyzing only the requirements of subsection 2.[7] The panel held that plaintiff had indeed alleged intentional torts. Therefore, to be protected by governmental immunity, the challenged acts undertaken by defendant had to be

---

[5] The motion for summary disposition also refers to MCR 2.116(C)(8); however, defendant made no arguments based on that rule. Moreover, in a subsequent motion for clarification of the trial court's order, defendant asserted that she sought summary disposition under (C)(7) and (10) and did not mention (C)(8).

[6] Subsection 1 provides immunity to governmental agencies when conducting governmental functions. It is well established that "the management, operation, and control of a police department is a governmental function." *Mack v Detroit*, 467 Mich 186, 204; 649 NW2d 47 (2002).

[7] *Odom v Wayne Co*, unpublished opinion per curiam of the Court of Appeals, issued February 1, 2007 (Docket No. 270501), p 2.

5

"justified" or "objectively reasonable under the circumstances," rather than not grossly negligent.[8] The panel held that, given the conflicting evidence, whether defendant's conduct was justified could not be decided as a matter of law.[9]

Initially, this Court denied defendant's application for leave to appeal.[10] However, upon reconsideration, we determined that this area of the law had fallen into disarray and required clarification. We granted defendant's application for leave to appeal and directed the parties to address the following issues:

> (1) what is the proper interpretation of MCL 691.1407(3) ("[MCL 691.1407(2)] does not alter the law of intentional torts as it existed before July 7, 1986."); (2) can intentional torts claims be brought under MCL 691.1407(2); and (3) for an intentional tort claim, what must a plaintiff plead to avoid governmental immunity?[11]

## II. STANDARD OF REVIEW

We review de novo a trial court's determination regarding a motion for summary disposition. Under MCR 2.116(C)(7), the moving party is entitled to summary disposition if the plaintiff's claims are "'barred because of immunity granted by law . . . .'"[12] The moving party may support its motion for summary disposition under

---

[8] *Id.* at 2-3, citing *VanVorous v Burmeister*, 262 Mich App 467, 480; 687 NW2d 132 (2004), *Sudul v Hamtramck*, 221 Mich App 455, 458; 562 NW2d 478 (1997), and *Brewer v Perrin*, 132 Mich App 520, 528; 349 NW2d 198 (1984).

[9] *Odom*, unpublished opinion per curiam at 3.

[10] *Odom v Wayne Co*, 480 Mich 1015 (2008).

[11] *Odom v Wayne Co*, 480 Mich 1184 (2008).

[12] *Glancy v City of Roseville*, 457 Mich 580, 583; 577 NW2d 897 (1998) (citation omitted).

MCR 2.116(C)(7) with "affidavits, depositions, admissions, or other documentary evidence," the substance of which would be admissible at trial.[13] "The contents of the complaint are accepted as true unless contradicted" by the evidence provided.[14]

In relation to a motion under MCR 2.116(C)(10), we similarly review "the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law."[15]

This decision also requires us to interpret the provisions of § 7 of the GTLA, MCL 691.1407. We review de novo questions of statutory interpretation.[16] The primary goal of statutory interpretation is to discern the intent of the Legislature.[17] "To do so, we begin with the language of the statute, ascertaining the intent that may reasonably be inferred from its language. When the language of a statute is unambiguous, the Legislature's intent is clear and judicial construction is neither necessary nor permitted."[18]

## III. ANALYSIS

### A. History of the Governmental Tort Liability Act

---

[13] *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999); see also MCR 2.116(G).

[14] *Maiden*, 461 Mich at 119.

[15] *Brown v Brown*, 478 Mich 545, 551-552; 739 NW2d 313 (2007).

[16] *Wayne Co v Hathcock*, 471 Mich 445, 455; 684 NW2d 765 (2004).

[17] *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 583; 624 NW2d 180 (2001).

[18] *Lash v Traverse City*, 479 Mich 180, 187; 735 NW2d 628 (2007).

Historically, governmental immunity was a common-law doctrine. In 1961, however, this Court abolished common-law governmental immunity in *Williams v Detroit*.[19] Although the Court almost immediately thereafter limited *Williams* and held that governmental immunity was abolished only in relation to municipalities,[20] the Legislature reacted by enacting the first version of the GTLA in 1965. The statute restored governmental immunity for municipalities and provided "uniform treatment for state and local agencies."[21] The statute did *not* address immunity for governmental officers or employees. Thus, governmental immunity for individuals continued to be completely "a creature of judicial decision-making."[22]

In 1984, *Ross v Consumers Power Co (On Rehearing)* comprehensively described the common-law test for individual governmental immunity from *all* tort liability. In *Ross*, judges, legislators, and the highest executive officials at all levels of government were given immunity from all tort liability when acting within the scope of their judicial, legislative, or executive authority.[23] Lower-level governmental officials and employees were afforded qualified immunity from all tort liability if they met all the following conditions: (1) the acts were taken during the course of employment and the employees were acting, or reasonably believed that they were acting, within the scope of their

---

[19] 364 Mich 231; 111 NW2d 1 (1961).

[20] *McDowell v State Hwy Comm'r*, 365 Mich 268; 112 NW2d 491 (1961).

[21] *Ross*, 420 Mich at 606.

[22] *Id.* at 629.

[23] *Id.* at 633.

authority, (2) the acts were taken in good faith, and (3) the acts were discretionary-decisional, as opposed to ministerial-operational.[24]

The Legislature amended the GTLA in 1986 in response to *Ross*. Section 7 of the GTLA now confers qualified immunity to individual governmental actors as follows:

> (2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.

> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

> (3) Subsection (2) does not alter the law of intentional torts as it existed before July 7, 1986.

> * * *

> (5) A judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority.

> * * *

> (7) As used in this section:

---

[24] *Id.* at 633-634.

(a) "Gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.[25]

## B. Interpretation of Subsections 2 and 3

The Legislature codified *Ross*'s grant of absolute immunity to high-ranking officials in MCL 691.1407(5). In MCL 691.1407(2), the Legislature granted immunity to individual governmental actors "from tort liability" for injuries or damage caused by the employee. The Legislature eliminated the *Ross* distinction between discretionary and ministerial acts and granted qualified immunity for both types of actions. Subsection 2 gives immunity for acts taken "while in the course of employment or service" if (a) the employee "is acting or reasonably believes he or she is acting within the scope of his or her authority," (b) the agency that the employee serves "is engaged in the exercise or discharge of a governmental function," and (c) the employee's "conduct does not amount to gross negligence that is the proximate cause of the injury or damage." Accordingly, the Legislature replaced the *Ross* "good faith" element with a gross-negligence standard.

Subsection 2 purports to apply simply to "tort liability," and, ironically, even though that subsection concerns only gross negligence, defendant argued for the first time at oral argument before this Court that the broad tort reference includes intentional torts. However, when read in context with subsection 3, it is clear that subsection 2 encompasses only *negligent* tort liability. In subsection 3, the Legislature unambiguously expressed its intent to maintain "the law of *intentional* torts as it existed before July 7, 1986."[26]

---

[25] MCL 691.1407.
[26] MCL 691.1407(3) (emphasis added).

Every provision of § 7 specifically and expressly prescribes the immunity from tort liability extended to governmental agencies and actors. In contrast, but not inconsistent with these provisions, subsection 3 indicates the Legislature's intent to *confer immunity* on governmental employees for intentional torts to the same extent allowed under the common law as it existed before July 7, 1986. Thus, the Legislature thereby removed immunity for intentional tort liability from the statutory grant of immunity in subsection 2.

As will be discussed in more detail later, subsection 2 does alter the law of governmental immunity as it existed before the amendment of § 7 for *negligent* torts committed by lower-level government employees. Subsection 3 represents a deviation from the legislatively created governmental immunity scheme, but the deviation is limited to *intentional* torts. "[I]t is a settled rule of statutory construction that where a statute contains a specific statutory provision and a related, but more general, provision, the specific one controls."[27] Because subsection 3 more specifically addresses "intentional torts" and subsection 2 more broadly addresses "tort liability," subsection 3 must control in this case.

We reject defendant's interpretation of subsection 3 as merely reiterating that a governmental employee who does not satisfy the requirements of subsection 2 remains liable for an intentional tort. This interpretation is contrary to the rules of statutory

---

[27] *In re Haley*, 476 Mich 180, 198; 720 NW2d 246 (2006), citing *Gebhardt v O'Rourke*, 444 Mich 535, 542-453; 510 NW2d 900 (1994).

11

construction in that it would render subsection 3 surplusage.[28]  A "reiteration," by definition, creates surplus language.[29]  Moreover, defendant's proposed interpretation of the statute necessarily assumes that the reference in subsection 2 to "tort liability" encompasses both intentional and negligent torts.  If the Legislature had intended to reiterate that a governmental employee remains liable in tort when he fails to meet the standards of subsection 2, the language of subsection 3 would not have been specifically limited to "intentional torts."

Furthermore, defendant's interpretation cannot be sustained.  As noted, subsection 2 *alters* the common-law test for governmental immunity.  If subsection 2 had altered the common law in relation to *all* torts, the express terms of subsection 3 *preserving* "the law of intentional torts as it existed before July 7, 1986," would be rendered a complete nullity.  Thus, although subsection 2 abolished the *Ross* distinction between discretionary and ministerial acts and replaced the *Ross* "good faith" element with a gross-negligence standard, those alterations are limited to negligent torts because "[s]ubsection (2) does not alter the law of intentional torts . . . ."[30]

*C.* Test for Immunity Outlined in *Ross*

The seminal pre-July 7, 1986, case defining the parameters of governmental immunity for individuals from tort liability is *Ross v Consumers Power Co (On*

---

[28] *Herald Co, Inc v Eastern Michigan Univ Bd of Regents*, 475 Mich 463, 470; 719 NW2d 19 (2006) ("[W]e interpret every word, phrase, and clause in a statute to avoid rendering any portion of the statute nugatory or surplusage.").

[29] *Random House Webster's College Dictionary* (1997) defines "reiterate" as "to say or do again or repeatedly; repeat, often excessively," and "surplusage" as "an excess of words, [especially] in pleading a case."

[30] MCL 691.1407(3).

*Rehearing*). Over the years, substantial confusion has arisen regarding the proper interpretation of the *Ross* test for individual governmental immunity as it is applied to intentional torts. A number of cases have either misinterpreted or failed to mention *Ross* in holding that there is no intentional-tort exception to governmental immunity.[31] We correct today this tangle of cases arising after the enactment of the current GTLA by following the legislative direction to apply the common law "as it existed before July 7, 1986."[32] *Ross* comprehensively stated the common-law test in Michigan for individual governmental-employee immunity before the statutory date. Contrary to defendant's position, *Ross* clearly provides governmental employees qualified immunity from intentional-tort liability at common law. We take this opportunity to reaffirm and restate the *Ross* test.[33]

Under *Ross*, to be immune from liability for intentional torts, the governmental employee must first establish that the acts were taken "during the course of . . . employment and" that the employee was "acting, or reasonably believe[d] [he was] acting, within the scope of [his] authority[.]"[34] This requirement ensures that a governmental employee will not be afforded immunity when committing ultra vires acts,

---

[31] See, e.g., *Marroco v Randlett*, 431 Mich 700, 707-708; 433 NW2d 68 (1988); *Smith v Dep't of Pub Health*, 428 Mich 540, 544; 410 NW2d 749 (1987). These cases are distinguishable from the current case because they involved high-level executive officials who were extended absolute immunity for conduct undertaken within their executive authority and governmental agencies, respectively, rather than individual governmental employees.

[32] MCL 691.1407(3)

[33] Cases holding that governmental employees are protected by more or less than the qualified immunity for intentional-tort liability provided in *Ross* are overruled to the extent that such cases are inconsistent with *Ross*.

[34] *Ross,* 420 Mich at 633.

13

as these are outside the scope of the employee's authority.[35]  However, it also protects a governmental employee who reasonably believes that he was authorized to take certain actions, but later learns that he was mistaken.[36]

The governmental employee must also establish that he was acting in "good faith." *Ross* did not elaborate on this element, relying instead on Prosser on Torts and the cases cited therein.[37]  Prosser noted that the "considerable majority of the state courts take the position that there is no immunity where the inferior officer does not act honestly and in good faith, but maliciously, or for an improper purpose."[38]  "[O]fficial immunity should not become a cloak for malicious, corrupt, and otherwise outrageous conduct on the part of those guilty of intentional abuse of power . . . ."[39]  The cases cited by Prosser indicate that there is no immunity when the governmental employee acts *maliciously* or with a *wanton or reckless disregard of the rights of another.*[40]

This standard is also consistent with prior Michigan caselaw.  In *Armstrong v Ross Twp*,[41] the Court of Appeals described good faith simply as acting without malice.  In *Blackman v Cooper*,[42] the Court of Appeals held that a police officer is entitled to immunity when he is "acting in good faith with probable cause . . . even though the arrest

---

[35] *Id.* at 631.

[36] *Id.* at 633 n 41.

[37] *Id.* at 632.

[38] Prosser, Torts (4th ed), § 132, p 989.

[39] *Id.*

[40] See *id.* at 987-990.

[41] 82 Mich App 77, 85-86; 266 NW2d 674 (1978).

[42] 89 Mich App 639, 643; 280 NW2d 260 (1979).

is subsequently found to be baseless."  In *Dickey v Fluhart*,[43] the Court of Appeals held that an "action may lie only if the officer has utilized wanton or malicious conduct or demonstrated a reckless indifference to the common dictates of humanity."

This Court has described a lack of good faith as "malicious intent, capricious action or corrupt conduct"[44] or "willful and corrupt misconduct . . . ."[45]  In *Firestone v Rice*,[46] in which the plaintiff brought an action for false imprisonment and assault and battery against a police officer for handcuffing him, the Court held:

> There must be some discretion reposed in a sheriff or other officer, making an arrest for felony, as to the means taken to apprehend the supposed offender, and to keep him safe and secure after such apprehension.  And this discretion cannot be passed upon by a court or jury unless it has been abused through *malice or wantonness or a reckless indifference to the common dictates of humanity*.

In addition, this Court has held that "willful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that it does."[47] Similarly, our standard civil jury instructions define "willful misconduct" as "conduct or a failure to act that was intended to harm the plaintiff"[48] and "wanton misconduct" as "conduct or a failure to act that shows such indifference to whether harm will result as to be equal to a willingness that harm will result."[49]  These instructions are consistent with

---

[43] 146 Mich App 268, 276; 380 NW2d 76 (1985).

[44] *Veldman v Grand Rapids*, 275 Mich 100, 113; 265 NW 790 (1936).

[45] *Amperse v Winslow*, 75 Mich 234, 245; 42 NW 823 (1889).

[46] 71 Mich 377, 384; 38 NW 885 (1888) (emphasis added).

[47] *Burnett v City of Adrian*, 414 Mich 448, 455; 326 NW2d 810 (1982).

[48] M Civ JI 14.12.

[49] M Civ JI 14.11.

the negation of the common-law definition of "good faith" and can be a useful guide for a trial court considering a defendant's motion for summary disposition based on individual governmental immunity. Thus, the proponent of individual immunity must establish that he acted without malice.

The final *Ross* element to be considered when determining whether an individual is entitled to governmental immunity is whether the challenged "act" was ministerial or discretionary in nature. As explained in *Ross*, "'A ministerial officer has a line of conduct marked out for him, and has nothing to do but to follow it; and he must be held liable for any failure to do so which results in the injury of another.'"[50] Ministerial acts "constitute merely an obedience to orders or the performance of a duty in which the individual has little or no choice."[51] The execution of an act once a decision has been made is also ministerial in nature.[52] "Discretion," on the other hand, "'implies the right to be wrong.'"[53] Discretionary acts "require personal deliberation, decision and judgment."[54] Although the decision need not be extraordinary, governmental immunity is not afforded for "every trivial decision" an actor may make.[55] Granting immunity to an

---

[50] *Ross*, 420 Mich at 626, quoting *Wall v Trumbull*, 16 Mich 228, 235 (1867).

[51] *Ross*, 420 Mich at 634.

[52] *Id.* at 634-635.

[53] *Id.* at 628, quoting *Williams*, 364 Mich at 261 (opinion by Edwards, J.).

[54] *Ross,* 420 Mich at 634, citing Prosser, § 132, p 988.

[55] *Ross*, 420 Mich at 634.

16

employee engaged in discretionary acts allows the employee to resolve problems without constant fear of legal repercussions. [56]

Police officers perform many discretionary acts each day. An officer must use his judgment to determine whether there is reasonable suspicion to investigate or probable cause to arrest and to determine the amount of force necessary to effectuate an arrest. A police officer similarly conducts many ministerial acts each day, such as completing activity logs and police reports or following the procedures for booking an arrested person.

### D. Burden of Proof

The parties dispute who bears the burden of proof with regard to governmental immunity: whether the plaintiff must plead in avoidance of immunity in the complaint or whether the defendant must raise immunity as an affirmative defense.

The doctrine of "sovereign immunity" dates back to the English common law. While England was ruled by an absolute monarch, English law settled that the king was the law and, therefore, could not violate the law. Moreover, it was deemed "a contradiction of [the king's] sovereignty to allow him to be sued as of right in his own courts."[57] Governmental immunity for individuals began as an extension of the sovereign immunity given the king. It was employed to protect from liability "the servants who were carrying out [the king's] commands."[58] However, when England began to function under a

---

[56] We again note that the elimination in MCL 691.1407(2) of the distinction between ministerial and discretionary acts does not apply to individual immunity from intentional tort liability, which is provided in subsection 3 of the statute.

[57] Prosser, § 131, pp 970; see also 4 Restatement Torts, 2d, ch 45A, p 394.

[58] 4 Restatement, §895D, comment a, p 411.

parliamentary government, English common-law immunity doctrines fundamentally changed. Although the king continued to be protected by sovereign immunity, the king's agents were held liable for their wrongs, and the wrongs of the king that were imputed to them.[59]

American courts adopted the concept of sovereign, or "governmental," immunity to protect from liability the sovereign state governments (and state agencies as integral parts of the state). A central tenet of this sovereign or governmental immunity is that the state may be held liable in a court of law only when the state has expressly permitted a suit against it.[60] Under the GTLA, the state maintains its immunity when "engaged in the exercise or discharge of a governmental function"[61] unless the plaintiff establishes the existence of a statutorily created exception to that immunity.[62]

Sovereign immunity as it applied to the king in English common law and statutorily created governmental immunity that is currently applicable to the state as a sovereign government are "characteristic[s] of government."[63] As such, this immunity

---

[59] See Prosser, § 131, p 971; 4 Restatement, § 895D, comment a, pp 411-412.

[60] Prosser, § 131, pp 971, 975-976; 4 Restatement, § 895B and comment a, pp 399-401.

[61] MCL 691.1407(1).

[62] The statutory exceptions to the governmental immunity provided to the state and its agencies are the highway exception, MCL 691.1402; the motor-vehicle exception, MCL 691.1405; the public-building exception, MCL 691.1406; the proprietary-function exception, MCL 691.1413; the governmental-hospital exception, MCL 691.1407(4); and the sewage-disposal-system-event exception, MCL 691.1417(2) and (3). *Wesche v Mecosta Co Rd Comm*, 480 Mich 75, 84 n 10; 746 NW2d 847 (2008).

[63] *Mack*, 467 Mich at 198, citing (among other cases) *Canon v Thumudo*, 430 Mich 326, 344 n 10; 422 NW2d 688 (1988), *Hyde v Univ of Michigan Bd of Regents*, 426 Mich 223, 261 n 35; 393 NW2d 847 (1986), *Ross*, 420 Mich at 621 n 34, and *McCann v Michigan*, 398 Mich 65; 247 NW2d 521 (1976). The only case holding otherwise was *McCummings v Hurley Med Ctr*, 433 Mich 404; 446 NW2d 114 (1989). *McCummings* was an aberration, which this Court overruled in *Mack*.

18

protects the state not only from liability, but also from the great public expense of having to contest a trial.[64]  A plaintiff filing suit against a governmental agency must initially plead his claims in avoidance of governmental immunity.  Placing this burden on the plaintiff relieves the government of the expense of discovery and trial in many cases.

Over time, governmental immunity for individuals evolved into an affirmative defense under the common law and thus was differentiated from the immunity given to the sovereign.[65]  In the GTLA, the Legislature has not abrogated the common law by shifting the burden of proof with regard to governmental immunity for individuals.  As such, the burden continues to fall on the governmental employee to raise and prove his entitlement to immunity as an affirmative defense.[66]

E.  Summary of the Test for Individual Governmental Immunity

---

[64] *Mack*, 467 Mich at 203 n 18; *Walsh v Taylor*, 263 Mich App 618, 624; 689 NW2d 506 (2004).

We note that the expense to the state government and to the public can be just as great in a suit filed against a governmental employee.  MCL 691.1408(1) provides that, in a civil action against a governmental employee, the government "may pay for, engage, or furnish the services of an attorney," "may compromise, settle, and pay the claim" before trial, and "may indemnify the officer, employee, or volunteer or pay, settle, or compromise the judgment" following a trial.  In light of this statute, it seems inconsistent to characterize sovereign or governmental immunity as a characteristic of government that the plaintiff must avoid in his pleading as an element of the claim and individual governmental immunity as an affirmative defense.  However, the Legislature indicated that "[t]his section does not impose liability on a governmental agency," MCL 691.1408(3), thereby expressing its intent not to transform the state's debt on behalf of an employee into something that can be protected by its sovereign or governmental immunity.

[65] *Mack*, 467 Mich at 198 n 15, quoting *Canon*, 430 Mich at 344 n 10.

[66] *Mack*, 467 Mich at 198 n 15; see also MCR 2.111(F)(3)(a).

19

To summarize and simplify the application of our decision, we provide these steps to follow when a defendant raises the affirmative defense of individual governmental immunity. The court must do the following:

(1) Determine whether the individual is a judge, a legislator, or the highest-ranking appointed executive official at any level of government who is entitled to absolute immunity under MCL 691.1407(5).

(2) If the individual is a lower-ranking governmental employee or official, determine whether the plaintiff pleaded an intentional or a negligent tort.

(3) If the plaintiff pleaded a negligent tort, proceed under MCL 691.1407(2) and determine if the individual caused an injury or damage while acting in the course of employment or service or on behalf of his governmental employer and whether:

(a) the individual was acting or reasonably believed that he was acting within the scope of his authority,

(b) the governmental agency was engaged in the exercise or discharge of a governmental function, and

(c) the individual's conduct amounted to gross negligence that was the proximate cause of the injury or damage.

(4) If the plaintiff pleaded an intentional tort, determine whether the defendant established that he is entitled to individual governmental immunity under the *Ross* test by showing the following:

(a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,

20

(b) the acts were undertaken in good faith, or were not undertaken with malice, and

(c) the acts were discretionary, as opposed to ministerial.

## IV.  APPLICATION OF THE *ROSS* TEST TO THIS CURRENT CASE

Following the guidelines set forth in this opinion, we first note that defendant indisputably is a lower-level government employee not entitled to the absolute immunity provided by MCL 691.1407(5).

It is equally clear that plaintiff pleaded intentional, rather than negligent, torts. Plaintiff asserted claims of false imprisonment and malicious prosecution, both of which contain intent as an element.[67]  Contrary to the trial court's opinion, a plaintiff need not plead a forceful or physical act, such as use of excessive force, but must plead only an *intentional* act.

As plaintiff pleaded the occurrence of intentional torts, the trial court was required to determine whether defendant was entitled to governmental immunity as provided by the common law before July 7, 1986.  Defendant timely raised governmental immunity as an affirmative defense in her first responsive pleading, as well as raising it in her motion for summary disposition.  To be entitled to governmental immunity, defendant must establish that she was acting in the course of her employment and at least reasonably believed that she was acting within the scope of her authority, that her actions were discretionary in nature, and that she acted in good faith.

Because it used the wrong legal standard, the trial court did not address these questions, finding only that there remained a question of fact whether defendant lacked

---

[67] See *Lewis v Farmer Jack Div, Inc*, 415 Mich 212; 327 NW2d 893 (1982).

21

probable cause to detain or arrest plaintiff. The mere existence of probable cause, however, is not the proper inquiry. A police officer would be entitled to immunity under *Ross* if he acted in good faith and honestly believed that he had probable cause to arrest, even if he later learned that he was mistaken.[68] Yet the existence of probable cause is relevant to the analysis; a claim of false arrest or false imprisonment cannot be sustained if the arrest was legal.[69]

The Court of Appeals held that there remained a question of fact whether defendant's conduct was justified and "objectively reasonable." This objective analysis is also not the proper *Ross* inquiry. The good-faith element of the *Ross* test is subjective in nature. It protects a defendant's honest belief and good-faith conduct with the cloak of immunity while exposing to liability a defendant who acts with malicious intent.[70]

On remand, the trial court must reconsider defendant's motion for summary disposition in light of the *Ross* test and determine if defendant adequately supported her claim of governmental immunity.

## V. CONCLUSION

The trial court erroneously determined that plaintiff's claims sounded in gross negligence and, therefore, analyzed defendant's motion for summary disposition based on governmental immunity under MCL 691.1407(2). Plaintiff pleaded claims of intentional torts, and defendant was required to establish that she was entitled to governmental immunity pursuant to *Ross*, as required by MCL 691.1407(3). The trial court's analysis

---

[68] See Prosser, § 132, p 989 nn 95-96, and the cases cited therein; see also *Blackman*, 89 Mich App at 643.

[69] *Lewis*, 415 Mich at 218 n 2.

[70] See Prosser, § 132, p 989.

was erroneous because it focused solely on the potential lack of probable cause to arrest and detain plaintiff, contrary to the requirements of *Ross*. The Court of Appeals recognized that plaintiff's claims sounded in intentional tort, but analyzed defendant's right to immunity under subsection 2, which applies only to negligent torts. On remand, the trial court must determine whether defendant had a good-faith belief that she possessed probable cause to detain plaintiff before ruling on defendant's motion for summary disposition based on governmental immunity.

Because of the errors committed below, we vacate the trial court's order with respect to defendant, vacate the judgment of the Court of Appeals and remand this case to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

Robert P. Young, Jr.
Clifford W. Taylor
Elizabeth A. Weaver
Maura D. Corrigan
Stephen J. Markman

Cavanagh and Kelly, JJ. We concur in the result only.

Michael F. Cavanagh
Marilyn Kelly