# STATE OF MICHIGAN

# COURT OF APPEALS

---

TENITA WEBB-EATON, also known as TENITA
WEBB EATON,

        Plaintiffs-Appellees,

v

WAYNE COUNTY COMMUNITY COLLEGE
DISTRICT, DORIS FIELDS, MADELINE
DIEDO, PRADATSUNDARASAR SUKHTA,
DORESEA LEWIS, MARY BEYERS,
DEBORAH WATSON, and CURTIS L. IVERY,

        Defendants,

and

CLARISSA SHAVERS,

        Defendant-Appellant.

UNPUBLISHED
February 21, 2017

No. 328068
Wayne Circuit Court
LC No. 13-012060-NZ

---

TENITA WEBB-EATON, also known as TENITA
WEBB EATON,

        Plaintiffs-Appellees,

v

WAYNE COUNTY COMMUNITY COLLEGE
DISTRICT, DORIS FIELDS, CLARISSA
SHAVERS, MADELINE DIEDO,
PRADATSUNDARASAR SUKHTA, DORESEA
LEWIS, MARY BEYERS, and DEBORAH
WATSON,

        Defendants-Appellants,

and

No. 328069
Wayne Circuit Court
LC No. 03-012060-NZ

-1-

CURTIS L. IVERY,

                      Defendant.

_____

Before:  K. F. KELLY, P.J., and GLEICHER and SHAPIRO, JJ.

PER CURIAM.

These consolidated appeals concern an action instituted by plaintiff, Tenita Webb-Eaton, against the Wayne County Community College District (WCCCD) and several of its faculty. The complaint raises two counts, one alleging violation of the Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq.*, and another alleging intentional infliction of emotional distress (IIED).  The trial court granted in part and denied in part defendants' motion for summary disposition under MCR 2.116(C)(7) (governmental immunity) and MCR 2.116(C)(10) (no genuine issue of material fact).  In Docket No. 328068, defendant Clarissa Shavers appeals as of right that portion of the trial court's opinion and order denying her motion for summary disposition on the basis of governmental immunity with respect to plaintiff's IIED count against her.[1]  In Docket No. 328069, WCCCD, Shavers, and defendants Doris Fields, Madeline Diedo, Pradatsundarasar Sukhta, Doresea Lewis, Mary Beyers, and Deborah Watson (collectively defendants) appeal by leave granted that portion of the trial court's opinion and order denying their motion for summary disposition with respect to the PWDCRA claim.[2]  We reverse both the denial of defendants' motion for summary disposition regarding plaintiff's PWDCRA claim and the denial of defendant Shavers's motion for summary disposition on plaintiff's IIED claim.

I.

Plaintiff is allergic to latex.  Her condition is so severe that an allergic reaction can be triggered by airborne, as well as direct, contact with latex.  Because of her sensitivity to airborne latex, she can suffer reactions simply by being in the same room or area as latex materials. Plaintiff first began her studies at WCCCD in 2008, earning two degrees.  Plaintiff was accepted into WCCCD's nursing program in 2011.  When she enrolled, plaintiff disclosed to WCCCD that she had a latex allergy.  Plaintiff left the program in 2012 claiming that defendants' failure to

---

[1] The trial court granted the remaining defendants' motions for summary disposition on plaintiff's IIED claims against them, and plaintiff has not appealed that portion of the trial court's order.

[2] *Webb-Eaton v Wayne Co Community College Dist*, unpublished order of the Court of Appeals entered October 27, 2015 (Docket No. 328069).

accommodate her latex allergy and other acts of discrimination against her because of her allergy made it impossible for her to continue in the program. Plaintiff then commenced this action.[3]

II.

We first address whether defendants were entitled to summary disposition on plaintiff's PWDCRA count. Summary disposition under MCR 2.116(C)(10) is appropriate when the evidence presented viewed in a light most favorable to the non-moving party shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 119-120; 597 NW2d 817 (1999). The PWDCRA prohibits educational institutions from "discriminat[ing] in any manner in the full utilization of or benefit from the institution, or the services provided and rendered by the institution to an individual because of a disability that is unrelated to the individual's ability to utilize and benefit from the institution." MCL 37.1402(a). The PWDCRA also requires educational institutions to "accommodate a person with a disability for purposes of . . . education . . . unless the person demonstrates that the accommodation would impose an undue hardship." MCL 37.1102(2).

"[I]n order to make out a prima facie case based on a violation of Article 4 of the [PWDCRA], a plaintiff must show (1) that she [has a disability] under the [PWDCRA], (2) that she is qualified for the educational opportunity sought in spite of her [disability], and (3) that, in spite of the above qualifications, she is not being afforded an equal opportunity to secure the educational opportunity as other applicants." *Crancer v Univ of Michigan Bd of Regents*, 156 Mich App 790, 795; 402 NW2d 90 (1986).[4]

The PWDCRA defines a "disability" under the act as "[a] determinable physical or mental characterisitic of an individual . . . if the characteristic . . . [f]or purposes of article 4, is unrelated to the individual's ability to utilize and benefit from educational opportunities, programs, and facilities at an educational institution." MCL 37.1103(d)(*i*)(C). A characteristic is "unrelated to the individual's ability" if "with or without accommodation, an individual's disability does not prevent the individual from . . . utilizing and benefiting from educational opportunities, programs, and facilities at an educational institution." MCL 37.1103(l)(*iii*). MCL 37.1102(2) provides further guidance on the extent to which an educational institution is to provide an accommodation by stating that "a person shall accommodate a person with a disability for purposes of . . . education . . . unless the person demonstrates that the accommodation would impose an undue hardship." At the summary disposition stage, a plaintiff

---

[3] Plaintiff first filed a lawsuit in federal court, raising a claim under the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq.*, and the same two claims at issue in this matter. The federal court granted summary judgment in favor of defendants with respect to the ADA claim. Having dismissed the only federal claim, the federal court declined to exercise supplemental jurisdiction over the remaining state-law claims.

[4] *Crancer* was decided when the act was known as the Handicappers Civil Rights Act (HCRA), 156 Mich App at 794-795, the HCRA is now called the PWDCRA, *Peden v Detroit*, 470 Mich 195, 219; 680 NW2d 857 (2004).

bears the burden of making a prima facie showing that a defendant has failed to accommodate her handicap, however, "[o]nce such a showing has been made, the burden shifts to the defendant to show that the accommodation required would impose an 'undue hardship.' " *Cebreco v Music Hall Ctr for the Performing Arts*, 219 Mich App 353, 355-356, 360; 555 NW2d 862 (1996).

It is undisputed by the parties that plaintiff's latex allergy is a determinable physical characteristic. Furthermore, plaintiff established through her own deposition testimony that she was exposed to latex on several occasions while a student in the nursing program. There is also evidence that plaintiff was qualified for the program and that but for the use of latex in the program, she would have been able to continue.[5] As noted in *Cebreco*, the question for purposes of this prong is whether plaintiff would be able to continue in her program with provision of "*some* accommodation." See 219 Mich App at 361.

The difficulty is that plaintiff offers little if any description as to what accommodation would allow her to complete the program. Plaintiff asserts that defendants should have had a formal policy regarding how to address latex allergies, but she fails to offer any suggestions as to what that policy might contain that would have allowed her to participate. The only suggestion that we can discern in her arguments and in the evidence she presented would be that the defendants wholly and immediately eliminate the use of all latex materials in their program. Defendants argues that such an accommodation would be an undue burden.

The parties agree that plaintiff's allergy can be triggered by merely being in the presence of latex, even if she does not make physical contact with it. They also agree that latex is ubiquitous in the instructional rooms. This would appear to be the reason that the accommodation sought by plaintiff amounts to removal of all latex from the premises. However, we agree with defendants that to immediately remove all latex materials from the program and immediately replace them all with non-latex products would constitute an undue hardship. Moreover, while plaintiff presents evidence that hospitals are accommodating patients who suffer from latex allergies on an individual basis and that some hospitals are converting to latex free facilities, defendants cannot require their associated hospitals, in which nursing candidates must perform the clinical part of their training, to become latex free. Therefore, plaintiff's failure to posit what reasonable accommodation short of complete and immediate removal of all latex would have allowed her to continue in the nursing program leaves us with little choice but to reverse the trial court and direct that defendants be granted summary disposition.

---

[5] Defendants also rely on our opinion in *Miller v Detroit*, 185 Mich App 789, 790-792; 462 NW2d 856 (1990) where we held that the plaintiffs were not handicapped under the HCRA because their determinable physical characterisitic, being confined to wheelchairs, was directly related to their ability to utilize and benfit from the defendant's public transportation system. *Miller* did not address whether the plaintiffs could have utilized or benefited from the public transportation system with an accommodation. See *id.* However, our Supreme Court has since stated that MCL 37.1103(l) requires courts to consider the effect of a reasonable accommodation in determining whether an individual's ability is unaffected by their determinable characterisitic. *Rourk v Oakwood Hosp Corp*, 458 Mich 25, 30-31; 580 NW2d 397 (1998).

In so ruling, however, we do not mean to suggest that more circumscribed accommodations for a student with a latex allergy would constitute an undue burden. Again, we emphasize that plaintiff has offered neither argument nor evidence to suggest that her very severe condition can be accommodated in a less comprehensive manner such as having certain rooms or areas designated as latex free or by purchasing latex free materials to offer as an alternative for the affected student to use.

### III.

We next turn to defendant Shavers's appeal of the trial court's denial of her motion for summary disposition with regard to plaintiff's IIED claim against her. Shavers contendeds that she is entitled to governmental immunity with respect to this count, and thus, entitled to summary disposition under MCR 2.116(C)(7).[6] Because IIED is an intentional tort, Shavers is entitled to immunity if:

> (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that [s]he was acting, within the scope of [her] authority,

> (b) the acts were undertaken in good faith, or were not undertaken with malice, and

> (c) the acts were discretionary, as opposed to ministerial. [*Odom v Wayne Co*, 482 Mich 459, 480; 760 NW2d 217 (2008).]

The only acts that the trial court found could support plaintiff's IIED claim, and the only acts that plaintiff argues could support the claim, concern Shavers's conduct with regard to plaintiff's grades.[7] Plaintiff concedes that Shavers's conduct concerning her grades falls within the first and third prongs above. Therefore, the only question is whether Shavers acted in good faith. Our Supreme Court has explained that the "good faith" inquiry is not objective, but rather, "[t]he good-faith element . . . is subjective in nature." *Id*. at 481-482. So long as the governmental employee has an honest belief that his or her conduct is justified, the employee acts with good faith, even if the employee later discovers that he or she was mistaken. See *id*. ("A police officer would be entitled to immunity . . . if he acted in good faith and honestly believed that he had probable cause to arrest, even if he later learned that he was mistaken.").

---

[6] We review a "trial court's ruling on a motion for summary disposition de novo." *Kendricks v Rehfield*, 270 Mich App 679, 681; 716 NW2d 623 (2006). "Governmental immunity is a question of law that is also reviewed de novo on appeal." *Id*. at 682.

[7] Plaintiff does discuss other instances of "harassment" by Shavers in the statement of fact portion in her brief on appeal. However, in the argument portion of her brief she does not point to this conduct as supporting her IIED claim but instead relies solely on her allegations of Shavers's conduct concerning her grades.

Plaintiff alleges that Shavers specifically directed two of plaintiff's instructors to give plaintiff lower or failing grades. While Shavers does not deny that she advised plaintiff's instructors to lower her grades, Shavers contends that she did so because plaintiff did not, in her opinion, adequately fulfill the requirements of the courses necessary to earn a higher grade. Plaintiff testified at her deposition that Shavers directed an instructor to give plaintiff a failing grade after plaintiff did not take the final exam in the instructor's course. However, as plaintiff testified, she was later allowed to make up the final exam and received a "B" in the course. Plaintiff also relies on the deposition testimony of defendant Mary Beyers, who stated that Shavers directed her to turn in plaintiff's evaluation for a clinical without marking it pass or fail.[8] Plaintiff claims that Shavers then failed her in that clinical. However, Beyers testified that Shavers directed her to turn plaintiff's evaluation in blank because plaintiff had missed required clinical hours, and Beyers stated that she did not believe Shavers's actions towards plaintiff were motivated by any form of bias or dislike for her. The deposition testimony does not establish that Shavers failed to act in good faith. Rather, it suggests that Shavers made decisions about plaintiff's grades based on an honest belief that plaintiff had not met the requirements of the respective courses.

Plaintiff also relies heavily on the affidavit of Chrissy Brooks, a classmate, in which Brooks averred that she witnessed a conversation between plaintiff and Shavers where Shavers threatened plaintiff about receiving a failing grade. Missing from the affidavit is any explanation, other than the affiant's mere opinion, regarding why Shavers would make such a statement to plaintiff. Plaintiff offers nothing more than speculation that the grades she received from Shavers were motivated by an animus towards plaintiff as opposed to a honest belief that plaintiff had failed to meet the necessary requirements of her courses. Speculation is not sufficient to survive a motion for summary disposition. *Skinner v Square D Co*, 445 Mich 153, 174; 516 NW2d 475 (1994). As such, Shavers is entitled to summary disposition with respect to plaintiff's IIED claim.

Reversed and remanded for entry of dismissal of all claims. We do not retain jurisdiction.


/s/ Elizabeth L. Gleicher
/s/ Douglas B. Shapiro

---

[8] Beyers explained that clinicals are graded on a pass/fail basis.