# STATE OF MICHIGAN

# COURT OF APPEALS

---

LOGAN SCHAUB, by Next Friend MICHAEL
SCHAUB,

        Plaintiff-Appellee/Cross-Appellant,

v

JAMES ALBERT SEYLER,

        Defendant/Cross-Appellee,

and

RYANN ELISE HERMAN and TRAVERSE
CITY AREA PUBLIC SCHOOLS,

        Defendants-Appellants.

UNPUBLISHED
November 15, 2018

No. 340993
Grand Traverse Circuit Court
LC No. 2017-031989-NI

---

Before: MURPHY, P.J., and SAWYER and SWARTZLE, JJ.

MURPHY, P.J. (*concurring in part and dissenting in part*).

I agree with the majority that defendant Traverse City Area Public Schools (TCAPS) is entitled to summary disposition based on governmental immunity, where the bus did not strike plaintiff, the bus did not knock defendant James Seyler's vehicle into plaintiff, and where, while perhaps a closer call, the operation of the bus did not physically force the contact between Seyler's vehicle and plaintiff. MCL 691.1405 (motor vehicle exception to governmental immunity); *Robinson v Detroit*, 462 Mich 439, 456-457; 613 NW2d 307 (2000) ("Given the fact that the motor vehicle exception must be narrowly construed, we conclude that plaintiffs cannot satisfy the 'resulting from' language of the statute where the pursuing police vehicle did not hit the fleeing car or otherwise physically force it off the road or into another vehicle or object."). I respectfully disagree, however, with the majority's determination that there was no gross negligence by defendant RyAnn Elise Herman (the bus driver) as a matter of law. Instead, I conclude that there exists an issue of fact regarding whether the bus driver's conduct was grossly negligent. Furthermore, I respectfully disagree with the majority that the trial court properly dismissed plaintiff's suit against Seyler. The trial court incorrectly applied the principles concerning comparative negligence and allocation of fault in summarily dismissing Seyler. I would affirm the trial court's decision to allow plaintiff's case to go forward against the bus driver, but I would reverse the court's rulings denying TCAPS's motion for summary disposition

-1-

and granting Seyler's summary disposition motion. Accordingly, I concur in part and dissent in part.

## I. GOVERNMENTAL IMMUNITY AND GROSS NEGLIGENCE

We review de novo a trial court's ruling on a motion for summary disposition. *Moraccini v City of Sterling Hts*, 296 Mich App 387, 391; 822 NW2d 799 (2012). This Court likewise reviews de novo the applicability of governmental immunity and the statutory exceptions to immunity. *Id.* MCR 2.116(C)(7) provides for dismissal of an action "because of . . . immunity granted by law." The moving party may submit affidavits, depositions, admissions, or other documentary evidence in support of the motion if substantively admissible. *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008). The contents of the complaint must be accepted as true unless contradicted by the documentary evidence. *Id.* This Court must consider the documentary evidence in a light most favorable to the nonmoving party for purposes of MCR 2.116(C)(7). *Moraccini*, 296 Mich App at 391. When there is no factual dispute, the determination whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide. *Id.* If, however, a relevant factual dispute does exist, summary disposition is not appropriate. *Id.* "If reasonable jurors could honestly reach different conclusions regarding whether conduct constitutes gross negligence, the issue is a factual question for the jury." *Oliver v Smith*, 290 Mich App 678, 685; 810 NW2d 57 (2010).

MCL 691.1407, which is part of the governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, provides, in pertinent part, as follows:

(2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency . . . is immune from tort liability for an injury to a person . . . caused by the . . . employee . . . while in the course of employment or service . . . if all of the following are met:

(a) The . . . employee . . . is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The . . . employee's . . . conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

Under the GTLA, "the burden . . . fall[s] on the governmental employee to raise and prove his entitlement to immunity as an affirmative defense." *Odom*, 482 Mich at 479. There is no dispute that the bus driver was acting within the course of her employment and scope of her authority at the time of the incident, nor is it disputed that a governmental function was being exercised by way of transportation of school students. MCL 691.1407(2)(a) and (b). The relevant question concerns whether there exists an issue of fact regarding whether the bus driver's conduct amounted "to gross negligence that [was] the proximate cause of the injury[.]" MCL 691.1407(2)(c). MCL 691.1407(8) defines "gross negligence" as "conduct so reckless as

to demonstrate a substantial lack of concern for whether an injury results." "Grossly negligent conduct must be conduct that is substantially more than negligent." *Bellinger v Kram*, 319 Mich App 653, 659-660; 904 NW2d 870 (2017). Gross negligence "has been characterized as a willful disregard of safety measures and a singular disregard for substantial risks." *Oliver*, 290 Mich App at 685.

Here, the bus driver initially drove past plaintiff's bus stop, and had she not missed the stop, plaintiff would have been able to safely board the bus absent any need to cross the street, given that the designated pickup location was on that side of the road where plaintiff regularly awaited his bus. The bus driver then circled back, pulling over to the side of the road across the street from and a bit beyond the normal pickup point; the bus was stopped partly on the roadway and partly on its shoulder. Video footage revealed that nearly two minutes elapsed between the time of the stop and when plaintiff was struck by Seyler's vehicle while attempting to cross the road to board the bus. This included a one-minute period in which no other traffic can be seen, yet the bus remained stationary on the side of the road. The videotape, along with the documentary evidence, when viewed in a light most favorable to plaintiff, could lead a reasonable juror to conclude that the bus driver remained parked without any plan to move or maneuver the bus to pick up plaintiff on his side of the road, and with the expectation that plaintiff would cross the roadway in the early morning darkness in an effort to board the bus.[1] And the video footage established that the bus driver did not activate the bus's flashing red lights and stop-sign crossing arm *until after* plaintiff was struck. She failed to take this precautionary measure despite the evidence giving rise to a reasonable inference that the bus driver wanted and was waiting for plaintiff to cross the roadway for boarding, while being fully aware that vehicles approaching the bus from the rear had been driving around her and directly into plaintiff's prospective footpath of travel. Indeed, the bus driver testified that a student passenger specifically informed her that plaintiff was approaching, yet the bus driver did not activate her flashing red lights and warning arm.

MCL 257.1855 addresses the procedures for receiving and discharging pupils from a school bus, providing, in relevant part, as follows:

> (2) The driver of a school bus while operating upon the public highways or private roadways open to the public shall receive or discharge pupils from the bus in the following manner:

> * * *

---

[1] In an affidavit by a student passenger who was on the bus at the time of the accident, she averred that "[i]t was clear to [her] that the bus driver was waiting for [plaintiff] and he was going to cross the road to get on the bus," and that it was "also clear that the bus driver was not going to pull back around to [plaintiff's] actual stop."

(b) If the pupils are required to cross the roadway, the driver of a school bus equipped with red and amber alternately flashing overhead lights in accordance with section 19 shall activate the alternately flashing overhead amber lights not less than 200 feet before the stop, stop the bus on the roadway or private road to provide for the safety of the pupils being boarded or discharged, deactivate the alternately flashing overhead amber lights, and activate the alternately flashing overhead red lights while receiving or discharging pupils. The bus shall stop in the extreme right-hand lane for the purpose of boarding or discharging pupils. Before resuming motion, the driver shall deactivate these lights and allow congested traffic to disperse where practicable. The deactivation of these lights is the signal for stopped traffic to proceed.

Given the evidence from which one could reasonably conclude that the bus driver pulled over to the roadway's shoulder with the intent to require plaintiff to cross the street and board the bus, absent activation of the bus's flashing amber lights until after the stop, followed by a nearly two-minute interval in which flashing red lights were never activated, a reasonable juror could find that the bus driver violated MCL 257.1855(2)(b).[2] Thus, the evidence could be characterized as demonstrating a willful disregard of safety measures and a singular disregard for substantial risks, i.e., gross negligence. *Oliver*, 290 Mich App at 685. In sum, reasonable jurors could honestly reach different conclusions regarding whether the bus driver's conduct amounted to gross negligence. *Oliver*, 290 Mich App at 685. Accordingly, in my view, the trial court properly determined that there exists an issue of fact regarding whether the bus driver was grossly negligent.

The majority, quoting MCL 257.1855(2)(b), asserts that there was no evidence that the bus driver required plaintiff to cross the roadway, where the bus driver testified that she was not anticipating that plaintiff would cross the road and that she had planned to turn the bus around and pick him up on his side of the road, and where there was no indication that she instructed plaintiff to cross the road. The majority fails to view the evidence in a light most favorable to plaintiff, apparently judging the bus driver to be credible instead of leaving that matter for a jury. As discussed earlier, there was more than sufficient evidence calling into question the bus

---

[2] The bus driver explained that it was her belief that she could not legally activate her flashing red lights while stopped because she had failed to activate her flashing amber lights in the process of initially pulling over to the side of the road. However, after she was stopped, the bus driver did activate her flashing amber lights for approximately one minute before turning them off, but she did not proceed to activate her flashing red lights, despite knowing that plaintiff was approaching. Also, it appears that the bus driver had the capability of activating the flashing red lights, even though the flashing amber lights had already been turned off, considering that the flashing red lights were turned on almost immediately after plaintiff was hit. I see nothing in the statute that precluded the bus driver from activating her flashing red lights under the circumstances prior to plaintiff being hit. Moreover, a reasonable juror could very well reject the bus driver's contention that activating her flashing red lights would have posed a greater danger because of its impact on traffic.

driver's assertions that she planned to turn the bus around and that she did not anticipate plaintiff crossing the road. Further, the fact that the bus driver did not expressly instruct nor motion to plaintiff to cross the road does not mean that she was not requiring him to cross, given that all of the surrounding circumstances indicated that she was indeed requiring him to cross the road in order to board the bus.

The majority posits that the evidence, at best, reflected that the bus driver was merely in the process of deciding whether to turn the bus around or to instruct plaintiff to cross when a student successfully encouraged plaintiff to cross. Once more, the evidence must be viewed in a light most favorable to plaintiff, and there was evidence that the bus driver was stopped for nearly two minutes, including a one-minute period in which there was no other traffic preventing her from maneuvering the bus to the other side of the road. How long was plaintiff supposed to wait on his side of the road for something that did not appear to be forthcoming? Additionally, with respect to the student who encouraged plaintiff to board the bus, his encouragement was clearly audible such that it would have been heard by the bus driver, yet the bus driver did not waive plaintiff away or activate the flashing red lights and stop-sign crossing arm. The majority maintains that it is not clear whether the bus driver had time to react and activate the flashing red lights upon discovering that plaintiff was crossing the road. However, this uncertainty is exactly why summary disposition is improper. The issue of gross negligence should go to the jury.

With respect to whether any gross negligence on the bus driver's part was "*the* proximate cause" of plaintiff's injuries, MCL 691.1407(2)(c) (emphasis added), I will address that issue in the last section of my opinion.


## II. COMPARATIVE NEGLIGENCE AND ALLOCATION OF FAULT

The trial court ruled that "no reasonable juror could find that defendant Seyler was more at fault for the accident than the plaintiff." Therefore, the court determined that Seyler was entitled to summary disposition under MCR 2.116(C)(10). In making its ruling, the trial court relied on MCL 500.3135(2)(b), which provides that "[d]amages shall be assessed on the basis of comparative fault, except that damages shall not be assessed in favor of a party who is more than 50% at fault."[3] I conclude that the trial court erred in its analysis by failing to take into consideration the possible combined or aggregate fault of Seyler and the bus driver in assessing whether plaintiff was more than 50% at fault. The court mistakenly assessed fault based on a one-on-one comparison between plaintiff and Seyler.

MCL 600.2957(1) provides:

> In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each person

---

[3] MCL 500.3135 concerns tort liability for noneconomic loss with respect to injuries arising out of the use of a motor vehicle, requiring proof of a death, serious impairment of a body function, or permanent serious disfigurement.

shall be allocated under this section by the trier of fact and, subject to section 6304, in direct proportion to the person's percentage of fault. In assessing percentages of fault under this subsection, the trier of fact shall consider the fault of each person, regardless of whether the person is, or could have been, named as a party to the action.

The term "fault" is defined as "an act, an omission, conduct, including intentional conduct, a breach of warranty, or a breach of a legal duty, or any conduct that could give rise to the imposition of strict liability, that is a proximate cause of damage sustained by a party." MCL 600.6304(8). And MCL 600.2959 provides in full:

> In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the court shall reduce the damages by the percentage of comparative fault of the person upon whose injury or death the damages are based as provided in section 6306 or 6306a, as applicable. If that person's percentage of fault is greater than the *aggregate fault of the other person or persons*, whether or not parties to the action, the court shall reduce economic damages by the percentage of comparative fault of the person upon whose injury or death the damages are based as provided in section 6306 or 6306a, as applicable, and noneconomic damages shall not be awarded. [Emphasis added.]

Accordingly, if, for example, a plaintiff seeking damages is 40% at fault, one defendant is 50% at fault, and a second defendant is 10% at fault, the plaintiff would still be entitled to recover his or her damages, minus 40% attributable to the plaintiff's fault. And the second defendant must remain in the lawsuit, even though he or she was less at fault than the plaintiff, with the plaintiff being more than 50% at fault if considered *solely* in comparison to the second defendant. Therefore, on total damages amounting to $100,000, the plaintiff would be entitled to recover $60,000—$50,000 from the first defendant and $10,000 from the second defendant.

Here, the trial court failed to take into consideration any fault by the bus driver, and only if plaintiff was more than 50% at fault than the aggregate fault of Seyler and the bus driver would Seyler be entitled to summary disposition, as would the bus driver regardless of any gross negligence issues. Thus, it is my position that the trial court erred in summarily dismissing Seyler. Only if the trial court found, as a matter of law, that Seyler was zero percent at fault, such that no damages could be entered against him, could the court have dismissed the action against Seyler, absent consideration of the bus driver's percentage of fault.[4] I would also note that MCL 600.2959 bars the recovery of noneconomic damages when a plaintiff is more than 50% at fault, while nonetheless allowing the recovery of economic damages against a defendant unless the plaintiff was 100% at fault. It appears, however, that economic damages are not at issue in the instant suit.

---

[4] The trial court never spoke in terms of specific percentages of fault, and it did not state that there was no fault whatsoever on Seyler's part.

As a final note on this issue, I am not convinced by the majority's harmless-error approach, which it invokes in light of the majority's determination that the bus driver was entitled to summary disposition. Assuming that the bus driver was protected by governmental immunity as a matter of law and no longer a party subject to potential liability, it would seem that a jury would still need to determine whether any fault should be allocated to her under the requirements in MCL 600.2957 and MCL 600.2959.[5] The absence of liability for gross negligence does not translate to a finding that the bus driver did not engage in conduct that was a proximate cause of plaintiff's injuries. See MCL 600.6304(8) (defining "fault").

### III. THE BUS DRIVER AND PROXIMATE CAUSE

The trial court ruled that it could not find, as a matter of law, that the bus driver was not the proximate cause of plaintiff's injuries. In *Ray v Swager*, 501 Mich 52, 83; 903 NW2d 366 (2017), our Supreme Court held:

> Proximate cause requires determining whether the defendant's negligence foreseeably caused the plaintiff's injuries. That negligence (or gross negligence in the case of the GTLA) cannot have been a proximate cause of a plaintiff's injury if it is not both a factual and legal cause of the injury. A court should take all possible proximate causes into account when determining whether the defendant was "the proximate cause," i.e., "the one most immediate, efficient, and direct cause of the injury . . . ." In this case, the Court of Appeals erred by instead attempting to discern whether the various but-for causes of plaintiff's injuries were a more direct cause of those injuries than defendant's alleged gross negligence, without first determining whether any of the asserted but-for causes were *proximate* causes. Accordingly, we vacate the Court of Appeals' decision and remand to the Court of Appeals for further proceedings not inconsistent with this opinion. [Citation omitted; ellipsis in original.]

I find it premature to address the issue regarding whether the bus driver was the one most immediate, efficient, and direct foreseeable cause of plaintiff's injuries. Under my analysis, there are three parties amongst whom fault could potentially be allocated or assessed—the bus driver, Seyler, and plaintiff himself. Once again, the term "fault" is defined as "an act, an omission, conduct, including intentional conduct, a breach of warranty, or a breach of a legal duty, or any conduct that could give rise to the imposition of strict liability, *that is a proximate cause of damage sustained by a party*." MCL 600.6304(8) (emphasis added).[6] Were a jury to decide that the bus driver was 100% at fault, the necessary correlation, given the statutory definition of "fault," would be that neither plaintiff nor Seyler were the proximate cause of

---

[5] The fault of identified nonparties must be assessed by the trier of fact. MCL 600.2957(1).

[6] As indicated, the term "proximate cause" is employed in defining "fault" and, under the reasoning in *Ray*, where proximate or legal cause was distinguished from factual cause, with proximate cause focusing on whether negligence foreseeably caused injury, a juror would have to consider foreseeability.

plaintiff's injuries, which in turn would mean, by process of elimination, that the bus driver was indeed the one most immediate, efficient, and direct foreseeable cause of plaintiff's injuries; she would be the only proximate cause.[7] Moreover, I believe that reasonable minds could differ regarding whether the bus driver, Seyler, or plaintiff was the one most immediate, efficient, and direct foreseeable cause of plaintiff's injuries. See *Ray*, 501 Mich at 76 ("If, on the basis of the evidence presented, reasonable minds could not differ on this question [of proximate cause], then the motion for summary disposition should be granted.").

In sum, I would affirm the trial court's decision to allow plaintiff's case to go forward against the bus driver, but I would reverse the court's rulings denying TCAPS's motion for summary disposition and granting Seyler's summary disposition motion. Accordingly, I respectfully concur in part and dissent in part.

/s/ William B. Murphy

---

[7] Because the definition of "fault" entails consideration of "proximate cause," it could be argued that the party or nonparty allocated the highest percentage of fault is the one most immediate, efficient, and direct foreseeable cause of a plaintiff's injuries.