RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0020p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

NICOLE HARRIS, Personal Representative of the
Estate of Jkhary Craft, Deceased,

*Plaintiff-Appellee,*

*v.*

No. 14-1033

EDWARD LASSEIGNE, in his individual capacity,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:12-cv-13763—George C. Steeh, District Judge.

Argued: January 14, 2015

Decided and Filed: February 4, 2015

Before: COLE, Chief Judge; KETHLEDGE, Circuit Judge; and OLIVER, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Marcelyn A. Stepanski, JOHNSON, ROSATI, SCHULTZ & JOPPICH, P.C., Farmington Hills, Michigan, for Appellant. Paul W. Broschay, LAW OFFICE OF PAUL W. BROSCHAY, Detroit, Michigan, for Appellee. **ON BRIEF:** Marcelyn A. Stepanski, JOHNSON, ROSATI, SCHULTZ & JOPPICH, P.C., Farmington Hills, Michigan, for Appellant. Paul W. Broschay, LAW OFFICE OF PAUL W. BROSCHAY, Detroit, Michigan, for Appellee.

_____

[*]The Honorable Solomon Oliver, Jr., Chief United States District Judge for the Northern District of Ohio, sitting by designation.

1

———————————

**OPINION**

———————————

OLIVER, District Judge.  In this civil rights action under 42 U.S.C. § 1983 and Michigan law, Defendant-Appellant Edward Lasseigne ("Lasseigne" or "Defendant") appeals the order of the district court denying him summary judgment based on qualified immunity and governmental immunity.  The district court found a genuine issue of material fact regarding whether Lasseigne used excessive force in the shooting death of Jkhary Craft ("Craft").  Lasseigne argues on appeal that no genuine dispute of material fact exists as to whether his actions were reasonable under the circumstances according to both federal and state law.  For the following reasons, we **DISMISS** Lasseigne's appeal of the district court's denial of summary judgment based on qualified immunity for lack of jurisdiction, **AFFIRM** the district court's denial of governmental immunity, and **REMAND** this action to the district court for further action consistent with this opinion.

**I.  BACKGROUND**

On August 27, 2009, Lasseigne, a police officer for the City of Pontiac, Michigan, shot and killed Craft, a fourteen-year-old male.  Many of the following facts are not in dispute.  The events of that day were set in motion by a 911 caller, stating that he had observed males in the neighborhood with guns.  The dispatch center contacted Pontiac police officers to notify them that persons with guns were walking west on Ypsilanti Avenue.  At this time, Officer Andrew Miller ("Miller") was driving a marked Chevy Tahoe police vehicle and Lasseigne was riding in the passenger seat when they heard the dispatch.  Officers Shawn Werner ("Werner") and Michael Daves ("Daves") were driving in a separate marked Chevy Tahoe police vehicle.

Lasseigne and Miller observed Craft walking down Ypsilanti while Werner and Daves approached Craft from another direction.  Werner stated that he motioned for Craft to come toward him, but Craft turned away and tugged at the waistband of his pants.  Lasseigne and Miller also stated that they saw Craft pull at the waistband of his pants.  According to Lasseigne, Craft "appeared to have a long bulge in his pants." (Lasseigne Dep. at 52:5-6, Apr. 10, 2013,

Dist. Ct. Dkt. No. 40-2, Ex. A.)  Lasseigne stated that Craft pulled a gun out of his pants and took off running.  The officers observed Craft running between two homes on Ypsilanti toward a wooded area.  Miller also said that he saw a gun in Craft's hand as he ran.  Miller and Lasseigne drove behind Craft, while Werner and Daves followed on foot.  All officers stated that Lasseigne yelled to Craft to drop his weapon.  Miller drove the Chevy Tahoe in front of a fence that separated the Ypsilanti Avenue backyards from a wooded area, in effect trapping Craft between the Chevy Tahoe and the fence.  In doing so, the Chevy Tahoe made contact with Craft's person.

Here, the parties' accounts diverge.  According to Lasseigne, Craft next leveled the weapon, a shotgun, and pointed it at him and Miller, who were about three to four feet away from Craft.  Lasseigne maintains that he feared for his and Miller's lives.  He then fired one shot, hitting Craft in the chest, but thought he may have missed.  Werner, Daves, and Lasseigne stated in deposition that Craft was holding the shotgun when he was shot.  Werner and Daves recalled that they saw Craft throw the shotgun over the fence after he was shot, while Miller and Lasseigne did not see this.  Lasseigne surmised that he may have taken his eyes off of Craft for a second and Miller stated that his view of Craft must have been obstructed.  The officers stated that they witnessed Craft say, "you shot me," and pull his t-shirt away from his body before slumping over.  Miller moved his vehicle and Craft fell to the ground. He was pronounced dead at the scene. The shotgun was found on the other side of the fence.

Karl Harris, who lived next door to the house where the shooting occurred, maintained in an affidavit to have looked out of his doorwall window toward his neighbor's backyard immediately after hearing the gunshot.  He claimed to have witnessed a police officer climb over his neighbor's fence and pick up the shotgun.  He stated that if the gun had been thrown over the fence at any point after the gunshot, he would have seen it.  He later clarified in his deposition testimony that he was looking out the window about two seconds after he heard the gunshot.

Craft's mother Nicole Harris ("Plaintiff") was appointed the personal representative of his estate and filed a wrongful death lawsuit, alleging Section 1983 claims and state law claims against Lasseigne, Miller, the City of Pontiac, and the former and current Emergency Managers for the City of Pontiac.  The district court entered judgment for the City of Pontiac and the Emergency Managers as to all claims without opposition from Plaintiff.  The district court also

granted summary judgment for Miller, finding that Miller's actions did not constitute excessive force when he contacted Craft with his vehicle. However, the district court denied Lasseigne's motion for summary judgment, finding that he was not entitled to qualified immunity or governmental immunity under Michigan law because there was a genuine dispute regarding whether Craft was holding the shotgun when he was shot. The court ultimately found that several pieces of evidence created a genuine issue of material fact regarding whether Lasseigne used excessive force. It concluded that a jury should hear Karl Harris's account. Further, the court stated as follows regarding other evidence in support of Plaintiff's claim:

> In addition, plaintiff points to the fact that Craft was shot only once, which she posits as inconsistent with officer training protocol and common sense, both of which would call for multiple shots in the face of imminent danger. Plaintiff also highlights still shots from the police video which depict Craft pinned–at least to some extent–to the fence. This brings into question Craft's ability to move, or "swing" a weapon during the events in question. Plaintiff also relies on the undisputed fact that the weapon did not have any blood on it, while both the fence and vehicle were splattered with blood, as evidence that Craft was not holding and pointing the gun at the officers when he was shot. Finally, the testimony of the officers reveals great uncertainty about the handling of Craft's gun, and at what point it went over the fence.

(Order at 14, Dec. 13, 2013, Dist. Ct. Dkt. No. 58.) For these reasons, the district court determined that a jury could reasonably conclude that Craft had already disposed of the gun when Lasseigne shot him.

Lasseigne filed a timely appeal to this court. Plaintiff filed a Motion to Dismiss the appeal, arguing that this court did not have jurisdiction to consider the appeal. In an order by the motions panel, this court denied Plaintiff's Motion and concluded that the merits panel should determine whether Lasseigne's claim raises a legal issue subject to review by our court.

## II. ANALYSIS

### A. Qualified Immunity

The denial of a summary judgment motion is not generally a final order that is immediately subject to appeal, but a denial of qualified immunity is immediately appealable. *Chappell v. City of Cleveland*, 585 F.3d 901, 905 (6th Cir. 2009). However, "this exception is

narrow," giving this court jurisdiction only over pure questions of law. *Id.* Accordingly, an appellate court may not review disputes of fact where the defendant is "merely quibbling with the district court's reading of the factual record," but may review whether "factual disputes (a) are *genuine* and (b) concern *material* facts." *Id.* at 906 (emphasis original). Upon review, the court must view the facts in a light most favorable to the plaintiff, unless those facts are "blatantly contradicted by the record," *Scott v. Harris*, 550 U.S. 372, 380 (2007), or are "so utterly discredited by the record as to be rendered a visible fiction." *Younes v. Pellerito*, 739 F.3d 885, 889 (6th Cir. 2014) (internal quotation marks omitted).

Where the court has jurisdiction to review the denial of qualified immunity, it does so *de novo*. *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011). It is important to note that "[t]his court does not ask 'whether the officers were entitled to qualified immunity under the officers' version of the facts,' but whether the plaintiff has disputed those facts." *Younes*, 739 F.3d at 889 (citation omitted). Therefore, "'[a] defendant challenging a denial of summary judgment on qualified immunity grounds must be willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal.'" *Id.* at 888 (quoting *Thompson v. Grida*, 656 F.3d 365, 367 (6th Cir. 2011)). In circumstances where "a defendant relies instead on her own disputed view of the facts, 'the appeal boils down to issues of fact and credibility determinations that we cannot make,'" and this court does not have jurisdiction. *Id.* (quoting *Thompson*, 656 F.3d at 367).

The plaintiff has the burden of demonstrating that the defendant should not be granted qualified immunity. *Chappell*, 585 F.3d at 907. Lasseigne is entitled to qualified immunity if the court determines that his actions in shooting Craft "did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* The court first determines "if the facts alleged make out a violation of a constitutional right," and next decides "if the right at issue was 'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). The court must answer both questions in the affirmative to deny qualified immunity. *Id.* It was clearly established at the time of the shooting that an officer violates the Fourth Amendment if he shoots a suspect without "probable cause to believe that the

suspect poses a threat of serious harm, either to the officer or to others." *Sample v. Bailey*, 409 F.3d 689, 697 (6th Cir. 2005) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)) (internal quotation marks omitted). Here, the parties agree that Craft posed no threat of serious physical harm apart from the shotgun. Thus, if Craft threw the shotgun over the fence before Lasseigne fired, Lasseigne violated Craft's Fourth Amendment rights. Harris asserts exactly that–that Craft threw the gun over the fence before the shot. Thus, under her version of the incident, Lasseigne was not entitled to qualified immunity. The district court held that a reasonable jury could accept that version; hence it denied qualified immunity to Lasseigne.

On appeal, Defendant argues that the district court should not have relied on Plaintiff's version of the facts because it is "blatantly contradicted by the record." However, Lasseigne's arguments amount to an attempt to demonstrate that his evidence is more plausible than Plaintiff's evidence. He spends time discussing how Craft's injuries would allow him to throw the gun after he was shot. However, this does not answer the question of whether he was holding the gun when he was shot. He also argues that the video stills show Craft turning the shotgun toward the officers before it went out of view, but a review of the video stills does not make clear that Craft was doing as he claims. Also, the video stills do not answer the question at issue because the relevant events occurred off-camera. While a jury would certainly not be required to conclude from Plaintiff's evidence that Lasseigne used excessive force, the evidence relied upon by the district court was not "so utterly discredited by the record as to be rendered a visible fiction." *Younes*, 739 F.3d at 889 (internal quotation marks omitted). To deny qualified immunity, the court need not conclude that the inferences drawn by the Plaintiff are the only reasonable inferences that could be drawn, but must simply find that the inferences drawn are reasonable and not blatantly contradicted. While Plaintiff's and Lasseigne's evidence contradict each other, neither renders the other "a visible fiction." *See Younes*, 739 F.3d at 889 (finding that on review of a qualified immunity denial, the police officers' statements contradicting the plaintiff's version of events were "not the type of evidence in the record which 'utterly discredits'" the plaintiff's evidence).

Lasseigne characterizes his appeal as one dealing with purely legal issues, but his appeal does not concede the facts in a light most favorable to Plaintiff. As a result, "[w]e are left with

precisely the sort of factual dispute over which this Court lacks jurisdiction." *Id.* at 890 (internal quotation marks omitted).

## B. Governmental Immunity

Under Michigan law, "[t]his court has jurisdiction over an interlocutory appeal of a denial of governmental immunity. . . ." *Younes*, 739 F.3d at 890. As with a proper appeal of a denial of qualified immunity, we review the appeal of a denial of governmental immunity *de novo*. *Id.* This requires the court to "view all facts in a light most favorable to the non-moving party and draw inferences in favor of the non-movant." *Id.* (internal quotation marks omitted). The court "appl[ies] Michigan governmental immunity law and federal procedural law to the issue." *Id.* (internal quotation marks omitted).

The district court correctly explained that governmental immunity is granted where a governmental employee:

> establish[es] that (1) the employee's challenged acts were undertaken during the course of employment and that the employee was acting, or reasonably believed he was acting, within the scope of his authority, (2) the acts were undertaken in good faith, and (3) the acts were discretionary, rather than ministerial, in nature.

*Odom v. Wayne Cnty.*, 760 N.W.2d 217, 218 (Mich. 2008). But "there is no immunity when the governmental employee acts *maliciously* or with a *wanton or reckless disregard of the rights of another*." *Id.* at 225. Here, construing the facts in Harris's favor, Lasseigne shot Craft while he was unarmed and otherwise posed no threat of physical harm to anyone. A reasonable jury could find that, in doing so, Lasseigne acted with a wanton or reckless disregard for Craft's rights. Thus, the district court correctly denied summary judgment based on governmental immunity.

## III. CONCLUSION

For the foregoing reasons, we **DISMISS** Lasseigne's appeal of the district court's denial of summary judgment based on qualified immunity for lack of jurisdiction and **AFFIRM** the district court's denial of governmental immunity.