# STATE OF MICHIGAN

# COURT OF APPEALS

KEVIN RANKIN,

       Plaintiff-Appellee,

v

CITY OF HIGHLAND PARK, HUBERT YOPP,
WILLIAM R. FORD, LORENZO VEAL, II, and
SANDY MCDONALD,

       Defendants-Appellants,

and

POLICE OFFICER WHITE and JOHN DOES 1-
10,

       Defendants.

UNPUBLISHED
February 24, 2015

No. 318385
Wayne Circuit Court
LC No. 11-015733-NO

Before: MURRAY, P.J., and HOEKSTRA and WILDER, JJ.

PER CURIAM.

Defendants City of Highland Park (the City), Hubert Yopp, William R. Ford, Lorenzo Veal, II, and Sandy McDonald, appeal as of right the order denying, in part, their motion for summary disposition premised on governmental immunity. For the reasons explained in this opinion, we affirm in part, reverse in part, and remand to the trial court for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

The present dispute centers on plaintiff's use of a building owned by the City and, in particular, his claims that defendants are liable for his loss of personal property in the building. Relevant to this dispute, the City had, at one time, rented the building in question to Achievable Visions, a business entity ultimately owned by Patricia Reid Porter. In December of 2010, Porter arranged to sell many of the business's assets to plaintiff, who planned to continue the operation of a community center in the building. Plaintiff alleges that he took possession of the building from Achievable Visions with the hopes of buying the building from the City. Specifically, plaintiff contends that, while purchase negotiations were ongoing, he arranged to rent the building from the City and he maintains that he in fact paid the City rent for January, February, and March of 2011. Plaintiff did not, however, have a written rental agreement with the City.

-1-

The City initiated eviction proceedings against Achievable Visions and, in January 2011, obtained a judgment requiring Achievable Visions to vacate the premises. In March of 2011, the City then obtained an order of eviction pertaining to Achievable Visions. These eviction proceedings did not name plaintiff as a party. Nonetheless, given the eviction order, on March 24, 2011, the City changed the locks on the building, which prevented not only entry by Achievable Visions, but also by plaintiff, who asserts he was improperly denied access to the building and prevented from retrieving personal property. At some point, vandals broke into the building, which plaintiff alleges resulted in the loss of some of his personal property. Plaintiff did, however, file an action in district court and he succeeded in gaining entry to the building to retrieve personal property pursuant to an inventoried list created by plaintiff.

Although plaintiff succeeded in gaining access to the building to retrieve personal property, he subsequently filed the present civil suit in circuit court seeking monetary damages. His complaint in circuit court consisted of 12 counts: (1) damages for breach of MCL 600.2918, (2) negligence, (3) gross negligence, (4) common law conversion, (5) statutory conversion pursuant to MCL 600.2919a, (6) theft, (7) intentional interference with an advantageous business relations, (8) a claim under 42 USC § 1983 premised on the taking of property without due process of law, (9) "intentional tort," (10) failure to refund rent, (11) defamation, and (12) "intentional infliction of emotional damage and the tort of outrageous conduct."

Following discovery, defendants moved for summary disposition under MCR 2.116(C)(7), (C)(8), and (C)(10). Relevant to the present appeal, defendants asserted immunity from suit under the Governmental Tort Liability Act (GTLA), MCL 691.1401 et seq. in relation to plaintiff's claims of negligence, gross negligence, conversion, intentional interference with a business relationship, defamation, and "intentional tort." Defendants also argued that plaintiff's claims of theft, "intentional tort," and failure to refund rent were not cognizable tort claims in Michigan, and that plaintiff's claims for defamation and intentional infliction of emotional damage were plainly meritless on their face, such that they must fail as a matter of law. Further, defendants maintained that, because there was no written lease, there was no landlord-tenant relationship between plaintiff and defendants, and that, in the absence of such a relationship, plaintiff's claim under MCL 600.2918 must fail. Regarding plaintiff's § 1983 claim, defendants maintained plaintiff had not been deprived of due process and they disputed plaintiff's claim that he had a property interest in the building or its contents, particularly when he had removed items pursuant to the district court order. On the whole, defendants argued that all of defendants 12 claims should be dismissed, either because of the applicability of governmental immunity or because plaintiff's claims were without merit.

The trial court granted summary disposition regarding plaintiff's claims of theft, defamation, and intentional infliction of emotional damage, but denied summary disposition regarding the rest of plaintiff's claims based on its conclusion that questions of fact remained

relating to the applicability of governmental immunity and the viability of the individual claims. Defendants now appeal as of right.[1]  See MCR 7.203(A); MCR 7.202(6)(a)(v).

## II.  STANDARD OF REVIEW

This Court reviews the grant or denial of a motion for summary disposition de novo. *Nuculovic v Hill*, 287 Mich App 58, 61; 783 NW2d 124 (2010).  Questions of law, including questions regarding the applicability of governmental immunity, are also reviewed de novo.  *Id.*; *Herman v Detroit*, 261 Mich App 141, 143; 680 NW2d 71 (2004).  Summarizing the standards applicable under MCR 2.116, this Court has explained:

> Subrule (C)(7) permits summary disposition where the claim is barred by an applicable statute of limitations.  In reviewing a motion under subrule (C)(7), a court accepts as true the plaintiff's well-pleaded allegations of fact, construing them in the plaintiff's favor.  The Court must consider affidavits, pleadings, depositions, admissions, and any other documentary evidence submitted by the parties, to determine whether a genuine issue of material fact exists.  These materials are considered only to the extent that they are admissible in evidence.
>
> A motion for summary disposition under subrule (C)(8) tests the legal sufficiency of the pleadings alone.  Where the parties rely on documentary evidence, appellate courts proceed under the standards of review applicable to a motion made under MCR 2.116(C)(10), or (C)(7).
>
> A motion made under MCR 2.116(C)(10) tests the factual support for a claim, and should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law[.]  When the burden of proof at trial would rest on the nonmoving party, the nonmovant may not rest upon mere allegations or denials in the pleadings, but must, by documentary evidence, set forth specific facts showing that there is a genuine issue for trial. But again, such evidence is only considered to the extent that it is admissible.  A genuine issue of material fact exists when the record, drawing all reasonable inferences in favor of the nonmoving party, leaves open an issue upon which

---

[1] Plaintiff has not filed a cross appeal.  Consequently, we do not address the propriety of the trial court's grant of summary disposition regarding plaintiff's claims of defamation, intentional infliction of emotional harm, and theft.  See generally *Turcheck v Amerifund Fin, Inc*, 272 Mich App 341, 351; 725 NW2d 684 (2006).  We also decline to consider plaintiff's claim of "intentional tort" because we know of no such claim in Michigan.  Under the heading of "intentional tort," plaintiff fails to identify a specific intentional tort and instead alleges that governmental immunity does not apply insofar as defendants' conduct constituted one or more intentional torts.  In other words, the claim is not for a separate or distinct injury, but rather an assertion that governmental immunity does not apply.  We find it unnecessary to address this as an individual claim outside the context of the specific intentional torts asserted by plaintiffs, which are discussed below.

reasonable minds could differ. [*Nuculovic*, 287 Mich App at 61-62 (citations omitted).]

### III. IMMUNITY FROM TORT LIABILITY UNDER THE GTLA

We begin our analysis with defendants' assertion of immunity under the GTLA, and, for the reasons explained below, we conclude that defendants were entitled to immunity in relation to plaintiff's tort claims of negligence, gross negligence, common law conversion, statutory conversion under MCL 600.2919a, and intentional interference with a business relationship. Consequently, the trial court erred in denying defendants' motion for summary disposition pursuant to MCR 2.116(C)(7) in relation to these claims.

### A. THE CITY

Under the GTLA, the City qualifies as a governmental agency. See MCL 691.1401(a), (d), and (e). With certain narrowly construed exceptions, "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." MCL 691.1407(1); *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 156, 158; 615 NW2d 702 (2000). There are six exceptions to this broad grant of governmental immunity, including, relevant to the present case, the proprietary function exception contained in MCL 691.1413, which states:

> The immunity of the governmental agency shall not apply to actions to recover for bodily injury or property damage arising out of the performance of a proprietary function as defined in this section. Proprietary function shall mean any activity which is conducted primarily for the purpose of producing a pecuniary profit for the governmental agency, excluding, however, any activity normally supported by taxes or fees. . . .

Under this exception, "[t]o constitute a proprietary function an activity (1) must be conducted primarily for the purpose of producing a pecuniary profit, and (2) it cannot be normally supported by taxes and fees." *Ward v Mich State Univ (On Remand)*, 287 Mich App 76, 85; 782 NW2d 514 (2010) (quotation marks and citation omitted). To determine whether an activity is conducted primarily for pecuniary profit, although not dispositive, courts may consider whether the activity actually generates a profit. *Transou v City of Pontiac*, 283 Mich App 71, 74; 769 NW2d 281 (2009). It may also be considered "where the profit is deposited and where it is spent . . . ." *Id.* (citation omitted).

Notably, a plaintiff seeking to bring suit against a governmental agency bears the burden of pleading his or her claim "in avoidance of governmental immunity." *Hannay v Dep't of Transp*, __ Mich __, __; __ NW2d __ (2014), slip op at 9. Stated more fully:

> Governmental immunity inheres in governmental agencies as a characteristic of government and, accordingly, there is a presumption that a governmental agency *is* immune from suit unless an exception to governmental immunity applies to the facts of the case. In order to rebut the presumption of immunity, a party suing a unit of government must plead in avoidance of governmental immunity. The party suing the governmental agency must plead

-4-

facts that-if true-demonstrate that an exception to governmental immunity applies: A plaintiff pleads in avoidance of governmental immunity by stating a claim that fits within a statutory exception or by pleading facts that demonstrate that the alleged tort occurred during the exercise or discharge of a nongovernmental or proprietary function. [*Yono v Dep't of Transp*, 306 Mich App 671, __; __ NW2d __ (2014), slip op at 5 (quotation marks and citations omitted).]

In regard to the proprietary function exception, the burden to plead in avoidance of governmental immunity requires a plaintiff to plead facts demonstrating that the activities were conducted for the primary purpose of producing a monetary profit, and that such activity was not the type normally supported by taxes and fees. See MCL 691.1413; *Williams v City of Cadillac*, 148 Mich App 786, 791; 384 NW2d 792 (1985).

In this case, regarding the assertion that the City was engaged in a proprietary function, plaintiff's complaint included the following conclusory statement:

48. That the defendants are not entitled to governmental immunity because the defendants were at the time of the events engaged in a proprietary function . . . .

Similarly, in plaintiff's response to defendants' motion for summary disposition, filed after more than a year of discovery in this case, plaintiff recited some general principles regarding the propriety function exception and stated that "the City is liable for damages under MCLA 691.1413 damages [sic] arising out of performance of propriety function."

Far from setting forth specific facts to plead in avoidance of governmental immunity, plaintiff's conclusory assertions fail to identify a specific activity conducted by the City, to demonstrate that the activity was proprietary, or to explain how plaintiff's alleged damages arose from the unspecified activity. Further, even assuming plaintiff means to suggest that the City's rental and/or potential sale of the building in question was a proprietary function, plaintiff fails to allege, or to draw our attention to any evidence, to suggest that the City undertook this activity for the *primary* purpose of turning a monetary profit. See MCL 691.1413; *Williams*, 148 Mich App at 791. Although there is evidence that plaintiff paid rent for the building, there has been, for example, no allegation that the City actually turned a profit relating to the building or that the City rented the building primarily to produce a profit; nor is there any explanation regarding how any funds received by the City were used. See *Dextrom v Wexford Co*, 287 Mich App 406, 421-423; 789 NW2d 211 (2010).

In short, plaintiff has not satisfied his burden of pleading facts to demonstrate the applicability of the proprietary function exception, and in such circumstances the City is entitled to the protections of governmental immunity provided by MCL 691.1407(1). Cf. *Williams*, 148 Mich App at 791. This immunity extends to all of plaintiff's tort claims, both negligence-based and intentional, specifically: negligence, gross negligence, common law conversion, conversion under MCL 600.2919a, and intentional interference with a business relationship. See generally MCL 691.1407(1); *Nawrocki*, 463 Mich at 156 (recognizing that immunity for governmental agencies extends to *all* tort liability); *Smith v Dep't of Pub Health*, 428 Mich 540, 544; 410 NW2d 749 (1987) (holding that there is no intentional tort exception to governmental immunity).

B. INDIVIDUAL DEFENDANTS

An individual governmental employee may be entitled to immunity under the GTLA, provided that he or she raises and proves entitlement to immunity as an affirmative defense. *Odom v Wayne Co*, 482 Mich 459, 479; 760 NW2d 217 (2008). In particular, immunity from negligent-based tort liability is provided to individual governmental actors by MCL 691.1407(2), which provides:

> Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:
>
> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

In other words, with regard to negligent acts, while in the course of employment, "[a]n employee of a governmental agency acting within the scope of his or her authority is immune from tort liability unless the employee's conduct amounts to gross negligence that is the proximate cause of the injury." *Kendricks v Rehfield*, 270 Mich App 679, 682; 716 NW2d 623 (2006). As used in MCL 691.1407(2), "gross negligence" means "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8). Further, to constitute the proximate cause of an injury, the alleged gross negligence must be "the one most immediate, efficient, and direct cause of the injury or damage." *Robinson v Detroit,* 462 Mich 439, 462, 613 NW2d 307 (2000).

Pursuant to MCL 691.1407(3),[2] government officials may also be immune from liability for intentional torts, provided that they satisfy the test set forth in *Ross v Consumers Power Co*, 420 Mich 567; 363 NW2d 641 (1984). See *Odom*, 482 Mich at 471-473. Specifically, applying the *Ross* test, an individual will be entitled to individual governmental immunity from an intentional tort, by showing:

---

[2] Specifically, this provision states: "Subsection (2) does not alter the law of intentional torts as it existed before July 7, 1986." MCL 691.1407(3).

(a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,

(b) the acts were undertaken in good faith, or were not undertaken with malice, and

(c) the acts were discretionary, as opposed to ministerial. [*Odom*, 482 Mich at 480.]

"[A] governmental employee does not act in 'good faith' if the employee acts 'maliciously or with a wanton or reckless disregard of the rights of another.' " *Radu v Herndon & Herndon Investigations, Inc*, 302 Mich App 363, 386; 838 NW2d 720 (2013), quoting *Odom*, 482 Mich at 474. To establish willful and wanton misconduct there must be an intent to harm or "such indifference to whether harm will result as to be the equivalent of a willingness that it does." *Odom*, 482 Mich at 475 (quotation marks and citation omitted). Discretionary acts have been defined as those which "require personal deliberation, decision and judgment." *Id.* at 476. In contrast, "ministerial" acts are those which "constitute merely an obedience to orders or the performance of a duty in which the individual has little or no choice." *Id.*

In this case, to assess the individual defendants' entitlement to immunity from tort liability, to begin with, it may be helpful to briefly identify the individual defendants and their purported roles in plaintiff's allegations. Defendants Yopp and Ford are the mayor and city attorney respectively, both of whom plaintiff alleges engaged in sale negotiations pertaining to the building and agreed to rent the premises to plaintiff. Defendant McDonald is the City's director of community and economic development, who plaintiff maintains also had some role in negotiations pertaining to the sale of the building. Defendant Veal is the City's chief of police. According to plaintiff's complaint, defendants Veal and McDonald were somehow involved with changing the locks to the building, or at least present at the time the locks were changed. Plaintiff's complaint also alleges that defendant Ford in particular told plaintiff he could not retrieve personal property absent a court order.

Turning to plaintiff's specific claims, plaintiff's allegations of negligence and gross negligence involve the assertion that defendants assumed control of plaintiff's personal property, thereby assuming a duty to protect those items, and that the failure to permit him access to his property and to protect his personal property from vandals constituted a breach of that duty, resulting in damage or loss to his personal property. Considering plaintiff's allegations of negligence and gross negligence, it is clear that the individual defendants are immune from tort liability relating to these claims. Initially, we note that it appeared to be largely uncontested in the trial court that defendants acted in the course of their employment and that they were acting, or reasonably believed they were acting, within the scope of their authority when they committed the acts in question.[3] Consequently, the individual defendants may only be held liable for

---

[3] For instance, plaintiff specifically conceded in his brief responding to defendants' motion for summary disposition that the individual defendants "were all acting in their capacity as

plaintiff's claims of negligence if their conduct amounted to gross negligence that was the proximate cause of plaintiff's injuries. See *Kendricks*, 270 Mich App at 682. Clearly then, plaintiff's claim of ordinary negligence must fail because it includes no claim that defendants were grossly negligence, i.e., that their conduct was "so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8).

Ostensibly, plaintiff's complaint alleged gross negligence by asserting defendants acted with indifference amounting to willful and wanton disregard for plaintiff's property. But, it is nonetheless clear that no material question of fact remains regarding defendants' purported gross negligence or the issue of proximate causation. Regarding gross negligence, even if some or all of the individual defendants prevented plaintiff from retrieving his property, the fact remains that they acted pursuant to an eviction order, they ultimately allowed plaintiff to retrieve property from the building, and the property in question remained in a *locked* building. Nothing about these circumstances evidences conduct so reckless as to demonstrate a substantial lack of concern for whether an injury resulted to plaintiff's property. See MCL 691.1407(8). In terms of proximate causation, we note that in regard to these claims, plaintiff's claim of loss pertains to his personal property. At this time, plaintiff has in fact retrieved many of his personal items from the building, and those items that were lost or damaged were lost due to acts by third party vandals. Given this more immediate and direct cause of any damage to plaintiff's property, the individual defendants cannot be considered the proximate cause of plaintiff's losses. In short, the individuals were neither grossly negligent nor the proximate cause of plaintiff's damages. Thus, they were entitled to immunity under MCL 691.1407(2) with regard to plaintiff's claims of negligence and gross negligence.

Setting aside plaintiff's negligence based torts, we now consider the individual defendant's immunity in relation to plaintiff's intentional torts, namely common law conversion, statutory conversion under MCL 600.2919a, and intentional interference with a business relationship. To reiterate, individual governmental actors are immune from intentional torts, if: "(a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority, (b) the acts were undertaken in good faith, or were not undertaken with malice, and (c) the acts were discretionary, as opposed to ministerial." *Odom*, 482 Mich at 480.

Again, in this case, it appears there was no dispute in the trial court that the acts in question were undertaken by the individual defendants during the course of employment and that they were acting, or reasonably believed they were acting, in the scope of their authority. On the record presented, we are also persuaded that that no material question of fact remains regarding whether the acts in question were discretionary in nature and undertaken in good faith. That is, plaintiff describes the governmental actors in question making decisions regarding the building, including decisions to sell and/or rent the building and the decision to pursue an eviction against Achievable Visions. Given the decision-making inherent in this conduct, these acts were plainly discretionary. Likewise, having obtained an eviction order, the appropriate steps necessary to

_____

governmental employees at the time that they did the acts asserted." In terms of negligence-based claims, plaintiff contended only that a question of fact remained regarding the issues of gross negligence and proximate causation.

maintain the peace and to protect the building and its contents, including the decision to change the locks, involved decisions that were discretionary in nature.

Furthermore, although some of plaintiff's property was ultimately lost due to the activities of vandals, neither plaintiff's complaint nor the evidence presented demonstrate that the individual defendants acted with malice. On the contrary, the individual defendants sought to lawfully evict Achievable Visions and to maintain the peace while executing a duly obtained eviction order. There is no evidence they intended harm to plaintiff or his property, or that they acted with indifference to whether such harm would result. See *Radu*, 302 Mich App at 386. Such assertions are belied by the fact that plaintiff's property remained in a locked building and that plaintiff succeeded in retrieving much of his personal property from the building unharmed. In these circumstances, no material question of fact remains to whether the acts in question were discretionary in nature and undertaken in good faith. Consequently, the individual defendants were entitled to immunity from plaintiff's intentional tort claims. See *Odom*, 482 Mich at 480.

In sum, under the GTLA, the individual defendants were entitled to immunity relating to plaintiff's tort claims, i.e., negligence, gross negligence, common law and statutory conversion, and intentional interference with a business relationship.[4] Consequently, the trial court erred in denying defendants' motion for summary disposition under MCR 2.116(C)(7) regarding these claims.

## IV. FAILURE TO REFUND RENT

---

[4] We note that, in the trial court, defendants asserted that Yopp, Ford, and Veal were entitled to absolute immunity. They reiterate this argument on appeal and now also contend for the first time that McDonald should receive absolute immunity. We recognize that certain high ranking executive officials are entitled to absolute immunity pursuant to MCL 691.1407(5). See *Petipren v Jaskowski*, 494 Mich 190, 204; 833 NW2d 247 (2013). Absolute immunity only applies, however, provided that the highest ranking executive official is acting within the scope of his or her executive authority, MCL 691.1407(5), and whether he or she acted within the scope of his or her executive authority requires consideration of the "the nature of the specific acts alleged, the position held by the official alleged to have performed the acts, the charter, ordinances, or other local law defining the official's authority, and the structure and allocation of powers in the particular level of government." *Petipren*, 494 Mich at 212-213 (citation omitted). Although it seems plain that Yopp, Ford and Veal are, according to the Highland Park Charter, the highest ranking executive officials of a level of government, defendants have not provided us with a meaningful discussion of the authority enjoyed by these officials by virtue of their positions. Given that defendants have not seen fit to provide a discussion of the executive authority possessed by each official as demonstrated by local law defining the officials' powers, we decline to search for authority supporting their position that these officials are absolutely immune on the facts of this case. See *Spires v Bergman*, 276 Mich App 432, 444; 741 NW2d 523 (2007). Thus, although we are persuaded that the individual defendants may claim immunity under MCL 691.1407(2), we find that, on the record presented, defendants have not established their right to absolute immunity under MCL 691.1407(5).

In his complaint, plaintiff maintains that he had a verbal agreement with the City to rent the building and that he paid the City rent for January, February, and March of 2011. He contends that the City changed the locks on March 24, 2011, thereby preventing his access to the building. Given the lockout, plaintiff maintains that he is entitled to return of a prorated portion the rent paid to the City for March, specifically an amount totaling $650. Initially, it must be noted that, considering the substance of plaintiff's allegation, his claim regarding failure to refund rent sounds in contract and not in tort. Although defendants have characterized the claim as one sounding in tort, for which defendants maintain they are immune, we are not bound by the parties' arguments or labels, but may look "to the substance of the claim asserted." *Local 1064, RWDSU AFL-CI0 v Ernst & Young*, 449 Mich 322, 327 n 10; 535 NW2d 187 (1995). See also *In re Bradley Estate*, 494 Mich 367, 387-388; 835 NW2d 545 (2013). Because this claim is one sounding in contract, rather than tort, governmental immunity does not apply. See *In re Bradley Estate*, 494 Mich at 387 & n 47; *Koenig v South Haven*, 460 Mich 667, 675; 597 NW2d 99 (1999). Consequently, the trial court did not err in denying defendants' motion for summary disposition based on governmental immunity grounds relating to plaintiff's claim for failure to refund rent.

Aside from their assertion of governmental immunity, defendants also argue on appeal that the trial court erred in denying their motion for summary disposition relating to plaintiff's claim for a refund of rent because plaintiff was required to join any demand for a refund of rent to the summary proceedings in the district court. This argument is not properly before this Court because defendants appeal as of right under MCR 7.202(6)(a)(v), meaning that, pursuant to MCR 7.203(A)(1), this Court's review is limited to the portion of the trial court's order pertaining to defendant's assertions of governmental immunity. See *Pierce v Lansing*, 265 Mich App 174, 182; 694 NW2d 65 (2005). In any event, "a party *may* join a claim for damages in a summary eviction proceeding up to the district court's jurisdictional limits, but it is not required to do so." *1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App 522, 527; 773 NW2d 57 (2009), citing MCL 600.5739(1). Thus, plaintiff was not required to join his demand for return of rent in the district court proceedings, and defendants were not entitled to summary disposition on this basis. On remand, plaintiff may proceed with his demand for return of rent.

V. VIOLATION OF MCL 600.2819

Plaintiff also alleged in his complaint that defendants did not include him in the eviction proceedings and thus unlawfully interfered with his possessory interests in the property in violation of MCL 600.2918.[5] It is plaintiff's position that he obtained a possessory interest in the property by virtue of his verbal agreement with the City and his payment of rent to the City

---

[5] MCL 600.2918, oftentimes referred to as the "self help statute," permits those whose possessory interest in a property have been unlawfully interfered with to recover actual damages and in some cases possession of property. See MCL 600.2918(2). The statute is structured to prohibit forceful "self-help" by landlords, and it is "intended to prevent parties from taking the law into their own hands in circumstances which are likely to result in a breach of the peace." *Deroshia v Union Terminal Piers*, 151 Mich App 715, 718-719; 391 NW2d 458 (1986).

through March of 2011.  Relating to this claim, defendants argue on appeal that the trial court erred in failing to grant them summary disposition premised on governmental immunity grounds as well as the absence of a landlord-tenant relationship with plaintiff, which they contend is required to establish a cause of action under MCL 600.2918.  In particular, defendants maintain that only the City Council could bind the City to a rental agreement.  Further, based on the absence of a written lease or purchase agreement, defendants contend any alleged oral contract was barred by the statute of frauds, and that plaintiff was thus not a tenant described in MCL 600.2918.

Although on appeal defendants have characterized plaintiff's claim under MCL 600.2918 as a tort action for which they are entitled to governmental immunity, they did not argue as such in the trial court.  Their summary disposition brief in the trial court makes the argument that they were entitled to summary disposition regarding plaintiff's MCL 600.2918 claim because, in the absence of a binding written agreement, there was no landlord-tenant relationship and thus no cognizable claim under the statute.  In other words, defendants' assertion of governmental immunity relating to this claim is unpreserved, and, given the insufficient appellate briefing of this issue by defendants, we decline to address this argument for the first time on appeal.  See *Wiggins v City of Burton*, 291 Mich App 532, 573-574; 805 NW2d 517 (2011).

To the extent defendants raise arguments involving the statute of frauds and the existence of a landlord-tenant relationship for purposes of MCL 600.2918, those issues are outside the realm of governmental immunity and thus not properly before this Court because our review is limited to the portions of the trial court's order denying defendants' claims of governmental immunity.  See *Pierce*, 265 Mich App at 182; MCR 7.202(6)(a)(v); MCR 7.203(A)(1).  We leave it to the trial court to address these issues in the first instance on remand.

## VI.  42 USC 1983

Finally, in his complaint, plaintiff also raised a federal 42 USC 1983 claim, asserting a denial of due process premised on defendants' refusal to grant plaintiff access to the building and defendants' retention of his personal property without involving him in the eviction proceedings.  As explained below, we conclude that the individual defendants were entitled to qualified immunity under federal law and that therefore these defendants should have been granted summary disposition under MCR 2.116(C)(7) in respect to plaintiff's § 1983 claim.  Insofar as defendants also assert the City should be granted summary disposition relating to this claim, these arguments are not properly before this Court because they fall outside the arena of governmental immunity.  We therefore decline to address these arguments and, on remand, plaintiff's § 1983 claim may proceed against the City.

### A. QUALIFIED IMMUNITY

Section 1983 provides a mechanism for the redress of constitutional violations.  See *By Lo Oil Co v Dep't of Treasury*, 267 Mich App 19, 30; 703 NW2d 822 (2005).  In states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the

-11-

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . . [42 USC 1983.]

This provision "is not itself an independent source of substantive rights; rather it merely provides a remedy for the violation of rights guaranteed by the federal constitution or federal statutes. . . ." *By Lo Oil Co*, 267 Mich App at 30. In order to sustain a cause of action under § 1983, the plaintiff must establish that: (1) the defendant acted under color of state law; (2) the conduct deprived the plaintiff of constitutional rights or a right secured by the laws of the United States; and (3) the deprivation of rights occurred without due process of law. *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 195; 761 NW2d 293 (2008).

Actions under § 1983 are outside the GTLA, meaning that the GTLA will not provide immunity against a § 1983 suit. See *Mack v Detroit*, 467 Mich 186, 195; 649 NW2d 47 (2002). Nonetheless, individual governmental actors may be immune from suit under § 1983 in accordance with the immunity recognized under federal law. In particular, certain officials— such as the President, judges, legislators, and prosecutors—enjoy absolute immunity. See *Mitchell v Forsyth*, 472 US 511, 520; 105 S Ct 2806; 86 L Ed 2d 411 (1985). Other governmental officials may be entitled to qualified immunity, which a defendant may invoke as a defense in order to avoid the burden of standing trial. *Walsh v Taylor*, 263 Mich App 618, 635; 689 NW2d 506 (2004). Specifically, "[t]he doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v Callahan*, 555 US 223, 231; 129 S Ct 808; 172 L Ed 2d 565 (2009) (citation omitted).

Once a defendant invokes qualified immunity, a plaintiff has the burden of overcoming this assertion at the pretrial stage. *Lavigne v Forshee*, __ Mich App __, __; __ NW2d __ (2014), slip op at 6-7. "To negate a defense of qualified immunity and avoid summary [disposition], the plaintiff need not present absolute proof, but must offer more than mere allegations." *Ontiveros v City of Rosenberg*, 564 F3d 379, 382 (CA 5, 2009) (citation omitted). The applicability of qualified immunity poses a question of law for the courts. *Morden v Grand Traverse Co*, 275 Mich App 325, 340; 738 NW2d 278 (2007). Although the steps for assessing qualified immunity need not be considered in any particular order, see *Pearson*, 555 US at 236, the Sixth Circuit has described the process as follows:

Qualified immunity involves a three-step inquiry. First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." [*Feathers v Aey*, 319 F3d 843, 848 (CA 6 2003) (citation omitted.]

Thus, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Harlow v Fitzgerald*, 457 US 800, 818; 102 S Ct 2727; 73 L Ed 2d 396 (1982). "For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Feathers*, 319 F3d at 848 (citations omitted). The "'objective legal reasonableness standard' analyzes claims of immunity on a fact-specific, case-by-case basis to determine whether a reasonable official in the defendant's position could have believed that his conduct was lawful, judged from the perspective of the reasonable official on the scene." *Cochran v Gilliam*, 656 F3d 300, 306 (CA 6, 2011).

In this case, plaintiff asserted that he possessed a property right, both in his personal belongings in the building and in his right to occupy the building pursuant to an alleged verbal agreement. He claims defendants interfered with his possessory interests and deprived him of property without due process of law, in violation of the Fourth and Fourteenth Amendments, because he was locked out of the building, and kept from his personal belongings, without being included in the eviction proceedings. Relevant to plaintiff's claims, a "seizure" of property potentially implicating Fourth Amendment rights "occurs where there is some meaningful interference with an individual's possessory interests in that property." *Soldal v Cook Co, Ill*, 506 US 56, 63; 113 S Ct 538; 121 L Ed 2d 450 (1992) (citation omitted). With regard to plaintiff's due process claim, generally "individuals must receive notice and an opportunity to be heard before the Government deprives them of property." *United States v James Daniel Good Real Prop*, 510 US 43, 48; 114 S Ct 492; 126 L Ed 2d 490 (1993). Relevant to the issue of evictions, although government action evicting a tenant solely at the behest of a landlord could amount to a constitutional violation, action to assist a tenant's eviction pursuant to a court order is typically considered objectively reasonable. See *Radvansky v City of Olmsted Falls*, 395 F3d 291, 304 (CA 6, 2005), citing *Soldal*, 506 US at 71-72.

Turning to the present facts, even supposing that plaintiff had a protected property right, the individual defendants are entitled to qualified immunity because plaintiff has not shown that the individual defendants took objectively unreasonable action in light of a clearly established constitutional right. See *Feathers*, 319 F3d at 848. First, regarding Yopp, the mayor, while there are allegations that he had a role in negotiations pertaining to the rent and/or sale of the building, there has been no demonstration that Yopp had involvement with securing the eviction order from the district court or that he was present at the time of its effectuation. In such circumstances, Yopp had no personal involvement in the proceedings which would constitute an interference with plaintiff's property rights or that could be considered unreasonable under the circumstances. See generally *Hansen v Cannon*, 122 Fed Appx 265, 269 (CA 7, 2004) (concluding that, relative to eviction proceedings, only officials who "intervene and actively participate in the seizure" face liability for their actions). Moreover, plaintiff's allegations that Yopp somehow conspired to obtain the eviction order and that he directed the lockup of the building are unsupported, and these mere allegations are insufficient to meet plaintiff's burden of overcoming Yopp's assertion of qualified immunity. See *Ontiveros*, 564 F3d at 382.

Second, turning to Ford, as with Yopp, there is nothing to suggest that Ford was present for the lockout and plaintiff's conspiracy allegations are insufficiently supported to defeat Ford's invocation of qualified immunity. See *id.* In contrast to Yopp, as the city attorney, Ford did take part in securing the eviction order from the district court. We fail to see, however, what right of plaintiff's Ford violated by seeking eviction of Achievable Visions or how Ford can be

considered objectively unreasonable for pursuing eviction proceedings against Achievable Visions given that entity's acknowledged failure to remit rent or land contract payments. Viewed objectively, we see nothing to suggest that Ford acted in an unreasonable manner in light of a clearly established constitutional right.

Finally, McDonald and Veal, as chief of police and director of community and economic development respectively, were present for the effectuation of the eviction order, namely, the changing of the building's locks. To the extent that they were allegedly involved with changing the building's locks, we see nothing objectively unreasonable in their conduct given that they acted pursuant to a duly obtained eviction order. The order of eviction directed the removal of Achievable Visions "and other occupants from the premises" and indicated that "peaceful possession" of the premises should be returned to the landlord, i.e., the City. Given this order, those actors present at the scene for the changing of the locks were not objectively unreasonable in believing that they acted lawfully when they attempted the peaceable return of the property to the City's possession. See *Radvansky*, 395 F3d at 304-305 (CA 6, 2005), citing *Soldal*, 506 US at 71-72.

In sum, plaintiff has not met his burden of showing that the individual defendants were not entitled to qualified immunity. Given the applicability of qualified immunity, the individual defendants were entitled to summary disposition under MCR 2.116(C)(7) in respect to plaintiff's § 1983 claim.

## B. FAILURE TO STATE A CLAIM UNDER § 1983

Aside from their arguments regarding qualified immunity, defendants assert on appeal that they were entitled to summary disposition under MCR 2.116(C)(8) because plaintiff failed to state a claim on which relief could be granted. In particular, defendants contend that plaintiff failed to identify a protected property interest for purposes of his due process claim, that he could not show a constitutional violation by defendants because the property was damaged or taken by vandals, that the actions in question were not undertaken pursuant to an official policy of the City, and that plaintiff failed to demonstrate that available post-deprivation state remedies, including the district court proceedings, were inadequate to protect his rights.

To the extent these arguments relate to the individual defendants, they need not be considered given the individual defendants' entitlement to qualified immunity as discussed *supra*. Insofar as defendants offer these arguments as reasons for granting summary disposition to the City, once again, we find that these issues are not properly before the Court. To the extent that defendants argue that the trial court erred in failing to dismiss the § 1983 claim pursuant to MCR 2.116(C)(8), we are constrained from addressing this issue by the fact that this is an appeal as of right from the trial court's denial of defendants' motion for summary disposition on the grounds of governmental immunity. See *Pierce*, 265 Mich App at 182; MCR 7.203(A)(1); MCR 7.202(6)(a)(v). That is, defendants' various arguments and potential defenses to the City's liability under § 1983 do not provide the City with immunity from suit. See *Leatherman v Tarrant Co Narcotics Intelligence & Coordination Unit*, 507 US 163, 166; 113 S Ct 1160; 122 L Ed 2d 517 (1993) ("[U]nlike various government officials, municipalities do not enjoy immunity from suit—either absolute or qualified—under § 1983."); see also *Swint v Chambers Co Com'n*, 514 US 35, 43-48; 115 S Ct 1203; 131 L Ed 2d 60 (1995). Because these issues do no involve

questions of governmental immunity, they are not properly before this Court at this time. See *Pierce*, 265 Mich App at 182.

## VII. CONCLUSION

In sum, the trial court erred in denying defendants' motion for summary disposition, premised on governmental immunity grounds, in relation to the City and the individual defendants regarding plaintiff's tort claims of negligence, gross negligence, common law and statutory conversion, and intentional interference with a business relationship. We thus remand for entry of summary disposition on these counts. Likewise, the individual defendants enjoy qualified immunity from plaintiff's § 1983 claim, and they are entitled to entry of summary disposition on remand relating to this claim.

Plaintiff's claim for unused rent sounds in contract, not tort, and it is thus not subject to the GTLA. Consequently, the trial court did not err in denying summary disposition regarding plaintiff's demand for a refund of rent. Plaintiff's claims under MCL 600.2918 against all defendants may also proceed on remand, as may his § 1983 claim against the City. Although defendants now claim governmental immunity relating to plaintiff's claim under MCL 600.2918, we decline to address this unpreserved argument because it has been insufficiently briefed by defendants on appeal. To the extent defendants attempt to argue the merits of these claims, or any of plaintiff's claims, such arguments are beyond the bounds of governmental immunity and not properly before this Court at this time.

Affirmed in part, reversed in part, and remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction. No taxable costs pursuant to MCR 7.219, neither party having prevailed in full.

/s/ Christopher M. Murray
/s/ Joel P. Hoekstra
/s/ Kurtis T. Wilder

-15-