*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT GARDNER,

      Plaintiff-Appellant,

v

MICHIGAN STATE UNIVERSITY, MICHAEL KILEY, JULIE BROCKMAN, MARCIA PORTER, and RANDY SHOWERMAN,

      Defendants-Appellees.

UNPUBLISHED
December 29, 2022

No. 360377
Court of Claims
LC No. 20-000227-MK

Before: JANSEN, P.J., and SERVITTO and GADOLA, JJ.

PER CURIAM.

Plaintiff appeals as of right the Court of Claims opinion and order granting summary disposition in favor of defendants, Michigan State University (MSU), Michael Kiley, Julie Brockman, Marcia Porter, and Randy Showerman.[1] We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a long history of disputes and litigation between plaintiff, MSU, and MSU employees. Plaintiff is a Hispanic male in his 60s. He holds a bachelor of science degree and a master's of science degree in animal science from MSU. In 1990, plaintiff began the doctoral candidacy program in agricultural economics at MSU. While engaged in the program, plaintiff began advocating on behalf of migrant workers, particularly in support of unionization. Plaintiff claimed that MSU administration took issue with his advocacy because it would compromise the school's relationships with farmers who funded MSU programs.

---

[1] There are no issues on appeal related to MSU, Porter, or Showerman. At the time of these lawsuits, Kiley was associate general counsel for MSU, and Brockman was an associate professor in the school of human resources and labor relations at MSU.

From 1993 to 2000, plaintiff filed several charges of discrimination against MSU and its employees with the Michigan Department of Civil Rights and the Equal Employment Opportunity Commission (EEOC) on the basis of racial discrimination and retaliation for advocating on behalf of migrant workers. In 1997, he filed suit against MSU and the chairperson of the agriculture economics department for racial discrimination and retaliation, which was dismissed. In 1999, plaintiff was terminated from the doctoral program under the "pretext" that he was supposed to finish within eight years. He appealed this decision, and while the appeal was pending, he refused to vacate his campus office, and was arrested and convicted of trespassing. He filed another complaint in 2002 in circuit court against MSU, the Board of Trustees, and two employees under the Elliot-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*. This case was dismissed on the merits. In 2012, plaintiff filed a lawsuit in federal district court against MSU and the then-provost alleging violations of his constitutional and civil rights. This suit was dismissed and plaintiff was assessed sanctions in 2014.

In 2015, plaintiff was hired by MSU as a research associate. In February 2016, plaintiff complained to his supervisor that he was being discriminated and retaliated against for filing the federal lawsuit, and later that same month, plaintiff's employment was terminated, according to plaintiff, without good cause. Thereafter, plaintiff started working with Brockman on a project proposal for developing best labor management techniques for fruit and vegetable growers. However, on April 11, 2016, plaintiff received an e-mail from Brockman stating that she was advised to discontinue the research. Plaintiff believed it was Kiley who advised Brockman to stop working with plaintiff. From September 2017 to August 2020, plaintiff applied for several positions with MSU. Plaintiff believes he was not hired because Kiley informed MSU administrators that plaintiff was blacklisted based on his prior civil rights complaints.

Plaintiff filed a 2019 lawsuit in pro per in Ingham Circuit Court against MSU, its Board of Trustees, the provost, and plaintiff's former supervisor, which was dismissed against the individuals with prejudice, and against MSU and the Board of Trustees without prejudice.

## II. THE LAWSUIT AT ISSUE

Plaintiff filed his original complaint in this matter in Ingham Circuit Court against defendants on September 16, 2020, alleging 18 counts. Defendants filed a notice of transfer, transferring the case to the Court of Claims. The parties disputed the transfer, defendants moved for summary disposition, and plaintiff filed a first amended complaint, which defendants moved to strike because it was not verified as required under the Court of Claims Act, MCL 600.6401 *et seq*. On January 29, 2021, the Court of Claims entered an opinion and order transferring plaintiff's claims under the ELCRA back to the circuit court, denied defendants' motion for summary disposition without prejudice, and granted plaintiff leave to file a verified first amended complaint. Plaintiff moved for reconsideration of the court's order retaining jurisdiction of plaintiff's remaining claims, which the court denied. Defendants moved for summary disposition a second time, but plaintiff applied for leave to appeal the Court of Claims decision to retain jurisdiction. Thereafter, the Court of Claims entered an order holding the matter in abeyance pending the appeal, and granting plaintiff leave to file a second amended complaint.

Plaintiff's second amended complaint is the subject of this appeal. In Counts I to III, he alleged breach of contract, breach of implied contract, and promissory estoppel against MSU for

being terminated from employment allegedly without good cause. In Count IV, plaintiff alleged promissory estoppel against Brockman "in her individual capacity" for the alleged promises she made to work on plaintiff's proposed project. In Count V, plaintiff alleged tortious interference with a business relationship or advantage by Kiley "in his individual capacity" for interfering with plaintiff's job applications. And in Count VI, plaintiff alleged intentional infliction of emotional distress against Kiley "in his individual capacity" for informing MSU administration that plaintiff was blacklisted and threatening to depose plaintiff's elderly parents.

After this Court denied plaintiff's application for leave to appeal in Docket No. 357109, *Gardner v Mich State Univ*, unpublished order of the Court of Appeals, entered October 22, 2021 (Docket No. 357109), defendants moved for summary disposition a third time. They argued that plaintiff's contract and quasi-contract claims against MSU were time barred because he failed to file a notice of intent within one year of the accrual of his claims. They argued that plaintiff failed to plead a proper claim of promissory estoppel against Brockman, and that Kiley was entitled to governmental immunity of the intentional tort claims alleged against him.

The Court of Claims agreed with defendants' arguments and granted summary disposition in their favor. Counts I, II, and III were dismissed because plaintiff conceded that he failed to timely file a notice of intent. The court concluded that plaintiff failed to plead a specific promise in his promissory estoppel claim against Brockman, and Kiley was entitled to governmental immunity of plaintiff's intentional tort claims. Plaintiff now appeals.

### III. STANDARD OF REVIEW

The decision of the Court of Claims whether to transfer a case back to the circuit court implicates the court's inherent power to control its own docket, and this Court reviews that decision for an abuse of discretion. *Baynesan v Wayne State Univ*, 316 Mich App 643, 651; 894 NW2d 102 (2016). The court abuses its discretion when its decision falls outside the range of principled outcomes. *Id*.

Defendants moved for summary disposition under MCR 2.116(C)(7) and (C)(8). We review de novo a lower court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019).

"MCR 2.116(C)(7) provides that a motion for summary disposition may be raised on the ground that a claim is barred because of immunity granted by law." *Dextrom v Wexford Co*, 287 Mich App 406, 428; 789 NW2d 211 (2010).

> When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them. If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is appropriate. [*Id*. at 428-429 (footnotes omitted).]

"A motion under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint." *El-Khalil*, 504 Mich at 159. "When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id*. at 160. Summary disposition may only be granted under this subrule "when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*.

The court may not weigh the evidence or make credibility determinations when deciding a motion for summary disposition. *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). Nor may the court make findings of fact; if the evidence is conflicting, summary disposition is improper. *Id*.

## IV. INTENTIONAL TORT CLAIMS AGAINST KILEY

Plaintiff first argues that the Court of Claims violated his constitutional right to a jury trial by retaining jurisdiction of his intentional tort claims pleaded against Kiley in his individual capacity. We disagree.

Courts must consider issues of subject-matter jurisdiction at any time. *Bowie v Arder*, 441 Mich 23, 56; 490 NW2d 568 (1992). "When a court lacks subject[-]matter jurisdiction to hear and determine a claim, any action it takes, other than to dismiss the action, is void." *Id*.

The state and its subdivisions may not be sued without consent, and the Legislature may place conditions or limitations on such suits. *Elia Cos, LLC v Univ of Mich Regents*, 335 Mich App 439, 447; 966 NW2d 755 (2021). "The Court of Claims is created by statute and the scope of its subject-matter jurisdiction is explicit." *Dunbar v Dep't of Mental Health*, 197 Mich App 1, 5; 495 NW2d 152 (1992). The Court of Claims has jurisdiction "[t]o hear and determine any claim or demand . . . for monetary, equitable, or declaratory relief . . . against the state or any of its departments or officers notwithstanding another law that confers jurisdiction of the case in the circuit court." MCL 600.6419(1)(a). The Court of Claims Act defines "the state or any of its departments or officers" as

> this state or any state governing, legislative, or judicial body, department, commission, board, institution, arm, or agency of the state, or an officer, employee, or volunteer of this state or any governing, legislative, or judicial body, department, commission, board, institution, arm, or agency of this state, acting, or who reasonably believes that he or she is acting, within the scope of his or her authority while engaged in or discharging a government function in the course of his or her duties. [MCL 600.6419(7).]

When a matter is transferred from the circuit court to the Court of Claims, the Court of Claims has exclusive jurisdiction, MCL 600.6421(4)(b), subject to MCL 600.6421(1), which provides:

> Nothing in this chapter eliminates or creates any right a party may have to a trial by jury, including any right that existed before November 12, 2013. Nothing in this chapter deprives the circuit, district, or probate court of jurisdiction to hear and determine a claim for which there is a right to a trial by jury as otherwise provided by law, including a claim against an individual employee of this state for which there is a right to a trial by jury as otherwise provided by law. Except as

-4-

otherwise provided in this section, if a party has the right to a trial by jury and asserts that right as required by law, the claim may be heard and determined by a circuit, district, or probate court in the appropriate venue.

The circuit court is presumed to have subject-matter jurisdiction over a civil action unless the Michigan Constitution or a statute expressly gives jurisdiction to another court. *O'Connell v Dir of Elections*, 316 Mich App 91, 101; 891 NW2d 240 (2016). Const 1963, art 1, § 14 provides that "[t]he right of trial by jury shall remain, but shall be waived in all civil cases unless demanded by one of the parties in the manner prescribed by law. . . ." The Court of Claims Act does not deprive the circuit court of jurisdiction to hear and determine a claim for which there is a right to a jury trial. MCL 600.6421(1). Rather, concurrent jurisdiction exists between the circuit court and the Court of Claims. *Baynesan*, 316 Mich App at 654, citing MCL 600.6421(1). The Court of Claims must resolve issues within its exclusive jurisdiction before transferring claims for which concurrent jurisdiction exists back to the circuit court. *Id*.

Plaintiff claims that the Court of Claims violated his constitutional right to a jury trial by disregarding the exception in MCL 600.6421(1) for "an individual employee of this state," and decided questions of fact on a motion for summary disposition. We disagree. In comparison to his ELCRA claims that were transferred back to the circuit court, plaintiff has no right to a jury trial for his tort claims against Kiley. Thus, they remained within the exclusive jurisdiction of the Court of Claims. Plaintiff claims that his tort claims against Kiley fall within the exception because they were pleaded against Kiley in his "individual capacity." However, courts determine the nature of a claim by examining its substance rather than its label. *Sunrise Resort Ass'n, Inc v Cheboygan Co Rd Comm*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 354540); slip op at 9 n 5. Plaintiff pleaded allegations against Kiley for actions taken during the course and scope of his employment with MSU as general counsel. The Court of Claims Act gives the Court of Claims exclusive jurisdiction against a state employee who is "acting, or who reasonably believes that he or she is acting, within the scope of his or her authority while engaged in or discharging a government function in the course of his or her duties." MCL 600.6419(7). Therefore, the Court of Claims did not abuse its discretion when it retained jurisdiction over plaintiff's intentional tort claims against Kiley. As will be discussed further below, the Court of Claims properly granted defendants summary disposition of these claims and did not engage in improper fact-finding.

To succeed on a claim of tortious interference with a business relationship or expectancy, plaintiff must prove "(1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the defendant, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage to the plaintiff." *Hope Network Rehab Servs v Mich Catastrophic Claims Ass'n*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 355372); slip op at 5 (quotation marks and citations omitted). However, when a plaintiff pleads an intentional tort claim against a government employee, the plaintiff must plead in avoidance of governmental immunity, and the burden is on the employee to prove his entitlement to immunity as an affirmative defense. *Odom v Wayne Co*, 482 Mich 459, 479; 760 NW2d 217 (2008). When a plaintiff pleads an intentional tort, the defendant must establish that he is entitled to immunity by proving that

(a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,

(b) the acts were undertaken in good faith, or were not undertaken with malice, and

(c) the acts were discretionary, as opposed to ministerial. [*Id*. at 480.]

In explaining the second element, the *Odom* Court stated that "there is no immunity when the governmental employee acts *maliciously* or with a *wanton or reckless disregard of the rights of another*." *Id*. at 474.

Plaintiff alleged in the second amended complaint that Kiley interfered with plaintiff's expectancy of obtaining employment with MSU by informing MSU administrators that plaintiff was blacklisted, his actions were "intentional and conduct with malice," were outside the scope of Kiley's authority, and plaintiff was not hired as a result. The actions that plaintiff claimed were malicious were Kiley's e-mails about deposing plaintiff's parents and the manuscript. These actions were taken within the course of Kiley's employment as MSU general counsel, they lacked any indication of malice, and they were discretionary. Kiley asked for the contact information for plaintiff's parents for a deposition, but conceded that informal communication would suffice. This does not rise to the level of malicious conduct. See *id*. Nor does Kiley's e-mail to plaintiff regarding the authorship of a manuscript. It was within the scope of Kiley's authority as general counsel to send an e-mail on behalf of his client regarding the potential intellectual property of the university, and there is no indication that this action was taken with malice.

Regarding plaintiff's claim that Kiley interfered with plaintiff's job applications, defendants relied on Kiley's affidavit.[2] Kiley attested that he was general counsel for MSU from 1986 to 2018. He attested that he was not aware that plaintiff applied for all of the positions he claims he did, and did not prevent or instruct anyone from considering plaintiff for employment. Thus, there was no genuine issue of material fact that Kiley was entitled to governmental immunity, and summary disposition of plaintiff's intentional interference claim was proper under MCR 2.116(C)(7).

The same reasoning applies to plaintiff's claim of intentional infliction of emotional distress against Kiley. To establish this claim, the plaintiff must prove "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Swain v Morse*, 332 Mich App 510, 534; 957 NW2d 396 (2020) (quotation marks and citation omitted). The defendant is only liable when his conduct "is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id*. (quotation marks and citation omitted). The test is whether "the recitation of the facts to an average member of the community would arouse his

---

[2] We note that defendants listed Kiley's affidavit as Exhibit M to their third motion for summary disposition, but it was not attached. However, it was attached to a previous motion, and therefore a part of the lower court record.

resentment against the actor, and lead him to exclaim, 'Outrageous!' " *Id*. (quotation marks and citation omitted).

In the second amended complaint, plaintiff alleged that Kiley's "outrageous" behavior included "informing the administrators who posted employment positions which Plaintiff applied for that he was being blacklisted by MSU and that the administrators should therefore not hire Plaintiff for those positions, and for threatening to contact Plaintiff's elderly parents who were living in a senior citizens' center in Puerto Rico." These allegations fail to describe conduct "so outrageous in character . . . as to go beyond all possible bounds of decency." *Id*. As mentioned above, Kiley conceded that informal communication with plaintiff's parents would be sufficient rather than taking their depositions. Moreover, plaintiff failed to plead in avoidance of Kiley's entitlement to immunity. The actions alleged by plaintiff were undertaken by Kiley in the scope of his employment as MSU general counsel, and do not rise to the level of malice. See *Odom*, 482 Mich at 480. Therefore, summary disposition of this claim was also proper.

## V. PROMISSORY ESTOPPEL CLAIM AGAINST BROCKMAN

Plaintiff argues that the Court of Claims erred in granting defendants summary disposition of his promissory estoppel claim against Brockman because it was sufficiently pleaded. We disagree.

The elements of a promissory estoppel claim are "(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided." *Cove Creek Condo Ass'n v Vistal Land & Home Dev, LLC*, 330 Mich App 679, 713; 950 NW2d 502 (2019) (quotation marks and citation omitted). "A promise is a manifestation of intention to act or refrain from acting in a specific way, so made as to justify a promisee in understanding that a commitment has been made." *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 41; 761 NW2d 151 (2008) (quotation marks and citation omitted). "The promise must be definite and clear, and the reliance on it must be reasonable." *Id*.

In the second amended complaint, plaintiff alleged in the statement of facts section that Brockman "agreed to participate in the project by providing use of the MSU facilities for the project; actively participating in the project; providing her expertise and advice in advancing the project; and seeking prospective financial support for the project via grant funding. Based on Brockman's assurances, Plaintiff expended considerable time and effort in enlisting employers and leaders in the agricultural community to support the project." Under Count IV of the complaint, plaintiff provided cursory statements alleging the elements of a promissory estoppel claim:

63. Brockman made promises to Plaintiff that she would participate fully in the project aimed at developing best management techniques for fruit and vegetable growers.

64. Brockman should have reasonably expected that her promises to Plaintiff would induce him to take action of a definite and substantial character by seeking to generate support for the project in the agricultural business community.

65. Brockman's promises to Plaintiff in fact produced reliance and forbearance by Plaintiff such that the promises must be enforced in order to avoid an injustice.

66. As a direct and proximate result of Brockman's breach of her promises Plaintiff has suffered damage to his reputation, and the loss of income and earning capacity, and extreme emotional distress.

The Court of Claims determined that plaintiff failed to plead a claim of promissory estoppel against Brockman because these allegations lacked the required specificity. We agree. Plaintiff alleged that Brockman made general promises to participate in the project without identifying what Brockman would actually do. Plaintiff failed to identify what MSU facilities Brockman could provide. Her alleged promise to seek financial support is too vague to be enforceable. Although Michigan is a "notice-pleading state," *Johnson v QFD, Inc*, 292 Mich App 359, 368; 807 NW2d 719 (2011), which requires that the pleading "give notice of the nature of the claim or defense sufficient to permit the opposite party to take a responsive position," *Stanke v State Farm Mut Auto Ins Co*, 200 Mich App 307, 317; 503 NW2d 758 (1993), and a motion for summary disposition is based on the pleadings alone, *El-Khalil*, 504 Mich at 159-160, the pleading of a claim for promissory estoppel must contain a clear and definite promise on the part of the promisor, *Zaremba Equip, Inc*, 280 Mich App at 41. Plaintiff failed to do so. Therefore, the Court of Claims properly granted defendants summary disposition of this claim.

Affirmed.

/s/ Kathleen Jansen
/s/ Deborah A. Servitto
/s/ Michael F. Gadola